DONALD BARTLETT, ADMINISTRATOR (ESTATE OF THOMAS BOTTICELLI) *vs.* THE TRAVELERS INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 5th—decided June 27th, 1933.

*Cyril F. Gaffney* and *Donald Gaffney,* for the appellant (plaintiff).

*Warren Maxwell,* with whom, on the brief, was *A. E. Brosmith,* for the appellee (defendant).

HINMAN, J.   The defendant insured the automobile liability of William Pankonin by a policy limiting its total liability on account of one accident to $10,000. On May 31st, 1931, Pankonin drove his automobile heedlessly and with reckless disregard for the rights of Thomas Botticelli, Joseph Buchieri and Clifford Faulkner, his guests, as a result of which Botticelli was killed and the others seriously injured.   Thereafter agents of the insurance company negotiated with Buchieri, Faulkner's attorney, and the plaintiff as administrator of the estate of Botticelli in an effort to adjust their claims against Pankonin, and on July 2d settled with Buchieri for $1000.   Plaintiff was notified of this settlement.   The plaintiff first demanded $6500, the defendant offered $3500 and the plaintiff reduced his demand to $5000.   On July 30th the defendant refused to pay this amount but renewed its offer of $3500.   On August 14th Faulkner brought suit against

Pankonin and threatened to attach his property unless the defendant promised in writing to pay Faulkner any sum he might recover up to the limit of its available coverage, which at the time was $9000. Defendant notified plaintiff of Faulkner's suit and demand for indemnity, advised him that its offer of $3500 could not be held open after August 17th in view thereof, and sought to prevail upon plaintiff to accept it, but he refused. On August 17th defendant issued its letter of indemnity to Faulkner agreeing to be responsible for final judgment obtained by him up to the sum of $9000 subject to the terms and conditions of the policy. On October 19th plaintiff offered to accept $3500 in settlement of his claim, but defendant was unable to pay this sum at that time because of its letter of indemnity to Faulkner, but advised the plaintiff that it was attempting to settle with Faulkner for $5000 and that, if successful, it would then be able to pay plaintiff the $3500. On October 21st the defendant, being ignorant of the fact that plaintiff had retained counsel and believing that he would accept the $3500 in settlement of his claim, in view of his willingness on October 19th, agreed with counsel for Faulkner to settle the latter's claim for $5250, and on October 23d paid that amount. On October 22d plaintiff's attorneys notified the chief adjuster of the defendant company of institution of a suit against Pankonin, and on January 20th, 1932, the Superior Court rendered judgment of $10,000 for the plaintiff in that action. Before hearing the defendant tendered the plaintiff $3750 and costs, but the tender was refused. Pankonin is financially unable to pay any part of the judgment.

The policy contained a provision [§ 3(a)] that the company agrees "to serve the assured . . . by such investigation, or by such negotiation or settlement of any resulting claims, as may be deemed expedient by

the Company," and is made subject to a condition (D) that "the assured shall not voluntarily make any payment, assume any obligation or incur any expense other than for immediate surgical relief, except at his own cost." It also provided in § 2 that if any judgment obtained by any person or his legal representatives against the assured for damages because of injuries within the terms of the policy "is not satisfied within thirty days after it is rendered, then such person or his legal representatives may proceed against the company to recover the amount of such judgment either at law or in equity, but not exceeding the limit of this policy applicable thereto."

On February 17th, 1932, the plaintiff instituted the present action, alleging that the sum of $3750 is inadequate and unreasonable compensation to the estate of Botticelli, that the defendant by the payments to Buchieri and Faulkner preferred them over the plaintiff, voluntarily made an inequitable distribution of the funds in its hands, and did not make the payments by reason of the liability imposed upon Pankonin by law for damages as provided in the policy. The trial court found the facts above set forth, also that the sums paid to Buchieri and Faulkner, respectively, while in full settlement of their respective claims against Pankonin, were neither paid nor accepted as full compensation but as fair compromise settlements of the claims.

The conclusions reached and to which the assignments of error are addressed are that the terms of the policy permitted the defendant to make such fair compromise settlements of claims against its assured as it deemed expedient and that the settlements with Faulkner and Buchieri were such, and the defendant thus satisfied its liability to Pankonin under its policy to the extent of $6250, and remained liable to him only

to the extent of $3750, the difference between those payments and its total liability of $10,000; also that, under § 4231 of the General Statutes, recovery in this action is limited to the right of the assured against the defendant and therefore to the amount which Pankonin might have recovered from the defendant under the policy, which amount was $3750 plus costs, and judgment was accordingly rendered for the plaintiff to recover that sum.

The general proposition advanced by the appeal is that an insurer under a liability policy, the coverage of which is limited as to amount, may not settle less than all of multiple claims arising from an accident, or, if it does, and the amount limited by the policy proves insufficient to satisfy both the claims compromised and those not settled but, instead, reduced to judgment, it is liable upon such judgments without being entitled to take into account payments made in satisfaction of the compromised claims.

Specifically, one of the contentions is that the policy here involved does not authorize the insurer to make and pay compromise settlements and have credit for the amount in diminution of its total liability. While the present policy provision [§ 3(a)] regarding settlements is not as explicit as that involved in *Century Indemnity Co.* v. *Kofsky,* 115 Conn. 193, 196, 161 Atl. 101, and does not specifically state, as did the latter, that payments made in settlement shall be accounted in diminution of the company's liability, it cannot fairly be construed otherwise than as authorizing negotiations for settlement and the compromise of such claims as the company, in good faith and in the exercise of fair and honest judgment, deems expedient. The right to deduct from the limited liability payments made for such settlements follows as a matter of reasonable and proper implication.

The appellant maintains, also, that under § 4231 of the General Statutes the insurer becomes absolutely liable to any such injured person as shall eventually pursue his claim to judgment, to the exclusion of, or at least prior to, claims which are amicably settled without being reduced to judgment. A claimant's rights under the statute are obtained by subrogation to the assured, and equally with him are subject to the provisions of the policy contract, including the privilege of settlement. The provision in § 4231 that the insurer "shall, whenever a loss shall occur . . . become absolutely liable" must be read with regard to the context and this indicates that the company's liability is made absolute only in the sense that payment for the loss shall not be dependent upon the satisfaction by the assured of a judgment against him as a condition precedent to recovery, as had been the case prior to the passage of this statute (Public Acts, 1919, Chap. 331). *Shea* v. *United States Fidelity & Guaranty Co.*, 98 Conn. 447, 120 Atl. 286. Also it may not be defeated by cancellation or annulment of the policy after the assured's liability to the injured party has accrued. *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649, 651, 653, 142 Atl. 268. It does not give the injured party any greater rights than the assured has or deprive the insurer of any rights which it has against the assured. Up to the time when a judgment is rendered for him in an action against the assured, a claimant has only an inchoate right against the insurer. *Goergen* v. *Manufacturers Casualty Ins. Co.*, 117 Conn. 89, 166 Atl. 757. In the meantime the plaintiff in a pending action is in no different or better position than other injured parties who have not brought suit, and the right in the company to negotiate and make settlements with any claimant remains unimpaired. Settlement of claims, therefore, cannot be regarded as

cancellation or annulment of the policy, as the appellant claims, but, rather, a performance of the policy agreement.

It is argued, further, that even if settlement of part of multiple claims is permissible under the policy and the statute, such settlements constitute an inequitable preference and are contrary to public policy. The avoidance of litigation by compromise adjustments of controversies is always to be favored. "Courts exist to furnish remedies where they cannot be obtained by peaceable means. The policy of the law is rather to discourage, than to encourage, a resort to litigation." *Thomas' Appeal*, 85 Conn. 50, 54, 81 Atl. 972. Especially in view of the present and increasing volume of litigated actions, practical necessity requires that settlements be effected in all cases where permissible and which are fairly susceptible to disposal in that manner. Claims growing out of the operation of automobiles are particularly numerous and if all or any considerable percentage of them were litigated to judgment the consequent congestion in courts would be intolerable. It is a matter of common knowledge that the great majority of such claims are adjusted; settlement is the rule and contest the exception.

The advantages of compromise to all parties concerned are manifest. The injured party obtains acceptable compensation without the delay, expense, inconvenience, anxiety and uncertainty of result attendant upon the pursuit of litigation; the party primarily liable is relieved of like annoyances and he or his insurer usually obtains the benefit of acceptance by the claimant of a less amount than would satisfy him but for the inducements attending a prompt and amicable compromise. A further important consideration in insured cases is the effect upon the personal liability of an assured above and beyond the amount, limited

by the policy, to which the insurer undertakes to indemnify him or become liable by subrogation to the injured party. If all claims within the policy coverage are not satisfied by payments within the policy limit, the assured, if financially responsible, is required to make good the deficiency. Therefore if, as here, the terms of the policy forbid him to settle any claim, except at his own cost, and accord the insurer the exclusive right to adjust such claims, he may be materially prejudiced, through incurrence of liability beyond the policy limit, by failure of the insurer to exercise that right. The assured being prevented from entering upon it, if the insurer be also precluded or under no duty to do so, the field of compromise settlement would be "left as a no man's land." *Douglas v. United States F. & G. Co.*, 81 N. H. 371, 379, 127 Atl. 708.

The duty incumbent upon the insurer in the premises, under such a policy, is recognized in that it is generally held liable to the assured for fraud or bad faith in failing or refusing to compromise or settle claims within the policy limit. "Where the insured is clearly liable and the insurer refuses to make a settlement, thus protecting the insured from a possible judgment for damages in excess of the amount of the insurance, the refusal must be made in good faith and upon reasonable grounds for the belief that the amount required to effect a settlement is excessive." *Mendota Electric Co.* v. *New York Indemnity Co.*, 169 Minn. 377, 380, 211 N. W. 317; *Wakefield* v. *Globe Indemnity Co.*, 246 Mich. 645, 225 N. W. 643; *Best Building Co.* v. *Employers' Liability Assur. Corp.*, 247 N. Y. 451, 160 N. E. 911; *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1, 231 N. W. 257; and other cases cited in 71 A. L. R. p. 1486 *et seq.* Some courts hold, further, that where the policy forbids the assured from assum-

ing any liability or settling any claim and reserves to the insurer the right of settlement, the insurer becomes the agent of the assured for the purpose of handling such claims, and will be held to that degree of care and diligence which a person of ordinary care and prudence would exercise in the management of his own business, and if in failing or refusing to compromise or settle a claim brought against the assured for an amount within the policy limit, it does not meet this standard of care and diligence it is liable, on the ground of negligence, to the assured for the excess of judgment over the policy limit. *Attleboro Mfg. Co.* v. *Frankfort Marine, A. & P. G. Ins. Co.* (C. C. A.) 240 Fed. 573; *G. A. Stowers Furniture Co.* v. *American Indemnity Co.* (Tex.) 15 S. W. (2d) 544; *Douglas* v. *United States F. & G. Co.*, 81 N. H. 371, 127 Atl. 708; 71 A. L. R. 1488.

As multiple claim cases are frequent in all jurisdictions and the aggregate number cannot be other than very large, the absence of reported cases analogous to the one now under consideration must signify a generally satisfactory result from the practice of insurers to settle such claims so far as expedient. Also, although statutory regulation is the logical remedy for unjust or unsatisfactory conditions in such matters, as, for example, was Chapter 331 of the Public Acts of 1919, now § 4231 of the General Statutes, the only legislation of which we are aware which touches the subject-matter of multiple claimants under limited liability policies, is a New York statute (Consolidated Laws, Chap. 25, § 282-b), which in effect provides that the amount of the bond required to be filed by proprietors of motor vehicles for hire, "conditioned for the payment of any judgment recovered for death or injury," shall be apportioned ratably among creditors under judgments recovered upon claims arising out of

the same accident. *Bleimeyer* v. *Public Service Mut. Cas. Ins. Co.*, 250 N. Y. 264, 165 N. E. 286. Against such advantages as the course thereby prescribed may afford, must be set the weighty considerations, above referred to, favoring amicable settlements without the necessity of reduction of all such claims to judgment. The fact that similar legislation has not been more extensively resorted to indicates that in the general run of cases no such injustice as between claimants has developed through exercise of the right of settlement as to outweigh the obvious advantages.

No doubt important safeguards in securing fair settlements, made with due regard to the conflicting interests of several claimants, consist in the interest of the insurer to minimize its own expenditures, and its duty to the insured which at least demands good faith and intelligent action. *New Orleans & Carrollton R. Co.* v. *Maryland Casualty Co.*, 114 La. 154, 38 So. 89, 6 L. R. A. (N. S.) 562, 567; note, 71 A. L. R. p. 1485 *et seq.* These restrictions, which are inherent in the situation, effectively militate against fraud, collusion, or similar evils.

It may be said, also, that the injured parties, as well as the insured, are entitled to the benefit of compliance with this duty of the insurer which clearly includes regard not only to the individual claim under immediate negotiation, but also to other existing claims covered by the policy, and the total amount of payments involved and its relation to the policy limit of the insurer's liability. The finding indicates due recognition of this consideration in the instant case. Both of the other claimants were notified of the manifestly prudent settlement of the Buchieri case, and negotiations for settlement of their own claims were undertaken and continued. The plaintiff was informed of

the Faulkner suit before the letter of indemnity was issued therein and given opportunity to accept the defendant's offer of $3500. It was not until after the plaintiff had offered to accept this amount that the defendant made a settlement of the Faulkner claim for $5250, which would allow payment to the plaintiff, without exceeding the policy limit, of the $3500 which the defendant, not being then advised of the plaintiff's change of mind after consulting counsel, might fairly assume and in good faith believe he continued willing to accept. The plaintiff was promptly notified of the Faulkner settlement and offered and afterward tendered the balance of the policy coverage, $3750, plus costs. The circumstances go far to confirm the defendant's assertion that "its effort toward an adjustment with the plaintiff was conducted with intelligence and care in its desire to benefit its assured by disposing of both Faulkner's and plaintiff's claims at a figure within the assured's limit."

The subsidiary claims of the appellant are covered, so far as we deem necessary, by the foregoing discussion.

The facts of this case do not appear to us to require or justify the adoption of a rule that in multiple claim cases an insurer may settle claims, although fairly, prudently and in good faith and with due regard to other claims, only at the risk of liability, above its policy limit, upon demands which it is not able to adjust. The necessary consequence of such a holding would be to require the reduction of all claims to judgment and, probably, an apportionment of the insurance coverage. At any rate such a drastic departure from prevailing policies and practices should be effected, if at all, after a much more comprehensive view of all conflicting considerations involved and the

light afforded by experience than is presented by this or any other isolated case.

There is no error.

In this opinion the other judges concurred.