FRANK VERRASTRO ET AL. *v.* MIDDLESEX
INSURANCE COMPANY
(13181)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued December 8, 1987—decision released April 19, 1988

*Leo Gold,* for the appellants (plaintiffs).

*John J. Cotter,* with whom was *Ann Marie W. Vetrosky,* for the appellee (defendant).

GLASS, J. The plaintiffs, Frank and Leonard Verrastro, sought damages from the defendant, Middlesex Insur-

ance Company, claiming that the defendant wrongfully refused to pay the proceeds of a fire insurance policy on a building owned by the plaintiffs and damaged by fire. The plaintiffs' four count complaint essentially alleged that the defendant breached its contract with the plaintiffs and breached the implied covenant of good faith and fair dealing. The defendant denied the material allegations of the complaint and asserted four special defenses: (1) that the plaintiffs failed to comply with the conditions of the policy; (2) that the plaintiffs were guilty of fraud and false swearing; (3) that the plaintiffs independently, through their partnership relationship or through their agents, committed acts either directly or indirectly that caused the destruction by fire of the property in question; and (4) that the plaintiffs failed to exhaust their administrative remedies.[1]

The record establishes the following facts. On September 22, 1980, the plaintiffs operated their Carvel store business on premises located on Bedford Street in Stamford. The defendant had issued an insurance policy, effective May 29, 1980, insuring the plaintiffs' business for any loss by fire for a period of one year. On September 22, 1980, the plaintiffs' Carvel store was damaged by fire. The plaintiffs and the defendant stipulated that the fire had an incendiary origin. The firemen found all doors and windows of the building secured at the time they arrived at the fire. The floor of the store was slippery, several gas cans were found on the premises and inside the store there was the odor of a petroleum-type product.

The trial court, *Lewis, J.*, found that the defendant had established by a preponderance of evidence that the fire was intentionally caused by arson, that the plaintiffs had the opportunity and motive to start the fire, and that the plaintiffs did start the fire. From the

---

[1] The defendant abandoned this special defense in its trial brief.

judgment rendered for the defendant the plaintiffs appealed to the Appellate Court. The appeal was transferred to this court pursuant to Practice Book § 4023.

On appeal the plaintiffs claim that the trial court erred in: (1) concluding that the defendant could prove its arson special defense by a preponderance of evidence rather than by clear and convincing evidence, where the policy excludes coverage for "any fraudulent, dishonest or criminal act"; (2) finding that the defendant had sustained the burden of proving that the plaintiffs had the "opportunity" to cause the fire; (3) prohibiting the plaintiffs from offering rebuttal evidence pertaining to matters upon which the defendant had the burden of proof; (4) finding that the defendant had acted timely in rejecting the proof of loss approximately five months after its receipt; and (5) finding that the defendant had not breached its implied duty of good faith and fair dealing. We find no error.

I

The plaintiffs' first claim is that the trial court erred in concluding that an insurer can prove an arson defense by a preponderance of evidence rather than by clear and convincing evidence where the policy excludes coverage for "any fraudulent, dishonest or criminal act." It is well established that fraud must be proven by " ' "clear, precise, and unequivocal evidence." ' " *Bound Brook Assn.* v. *Norwalk,* 198 Conn. 660, 666, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986). Although the defendant asserted fraud in its second special defense, in the third special defense the defendant sought to bar the plaintiffs' claim because of arson.

In a property insurance case it is not necessary that proof of arson be established by "clear, precise, and unequivocal evidence," as is required to prove fraud. A majority of the states that have examined the burden

of proof in civil arson cases have adopted the preponderance of the evidence standard.[2] This rule has been applied in jurisdictions, like Connecticut, that have adopted the "clear and convincing evidence" standard for proof of fraud in a civil action. See *Godwin* v. *Farmers Ins. Co. of America,* 129 Ariz. 416, 631 P.2d 571 (1981). Furthermore, commentators have consistently held that the preponderance of the evidence standard is appropriate to prove a special defense of arson.

[2] We have examined caselaw from twenty-five states that have considered the standard of proof in a civil arson case. Twenty-two states have applied the preponderance of the evidence rule: *Mueller* v. *Hartford Ins. Co. of Alabama,* 475 So. 2d 554 (Ala. 1985); *Godwin* v. *Farmers Ins. Co. of America,* 129 Ariz. 416, 631 P.2d 571 (1981); *Haynes* v. *Farm Bureau Mutual Ins. Co. of Arkansas,* 11 Ark. App. 289, 669 S.W.2d 511 (1984); *Lawson* v. *State Farm, Fire & Casualty Ins. Co.,* 41 Colo. App. 362, 585 P.2d 318 (1978); *Precision Printers, Inc.* v. *Central Mutual Ins. Co.,* 175 Ga. App. 890, 334 S.E.2d 914 (1985); *Dean* v. *Ins. Co. of North America,* 453 N.E.2d 1187 (Ind. App. 1983); *Neises* v. *Soloman State Bank,* 236 Kan. 767, 696 P.2d 372 (1985); *Clifton* v. *Louisiana Farm Bureau Casualty Ins. Co.,* 510 So. 2d 759 (La. App. 1987); *Trempe* v. *Aetna Casualty & Surety Co.,* 20 Mass. App. 448, 480 N.E.2d 670 (1985); *United Gratiot Furniture Mart, Inc.* v. *Michigan Basic Property Ins. Assn.,* 159 Mich. App. 94, 406 N.W.2d 239 (1987); *DeMarais* v. *North Star Mutual Ins. Co.,* 405 N.W.2d 507 (Minn. App. 1987); *Britton* v. *Farmers Ins. Group (Truck Insurance Exchange),* 721 P.2d 303 (Mont. 1986); *Italian Fisherman, Inc.* v. *Commercial Union Assurance & Co.,* 215 N.J. Super. 278, 521 A.2d 912, cert. denied, 107 N.J. 152, 526 A.2d 211 (1987); *Yassoo Enterprises, Inc.* v. *North Carolina Joint Underwriting Assn.,* 73 N.C. App. 52, 325 S.E.2d 677 (1985); *Zajac* v. *Great American Ins. Cos.,* 410 N.W.2d 155 (N.D. 1987); *Caserta* v. *Allstate Ins. Co.,* 14 Ohio App. 3d 167, 470 N.E.2d 430 (1983); *Seals, Inc.* v. *Tioga County Grange Mutual Ins. Co.,* 359 Pa. Super. 606, 519 A.2d 951 (1986); *Rutledge* v. *St. Paul Fire & Marine Ins. Co.,* 286 S.C. 360, 334 S.E.2d 131 (1985); *Raphtis* v. *St. Paul Fire & Marine Ins. Co.,* 86 S.D. 491, 198 N.W.2d 505 (1972); *Texas General Indemnity Co.* v. *Speakman,* 736 S.W.2d 874 (Tex. Civ. App. 1987); *Huff* v. *State Farm Fire & Casualty Ins. Co.,* 716 S.W.2d 927 (Tenn. App. 1986); *Great American Ins. Co.* v. *K & W Log, Inc.,* 22 Wash. App. 468, 591 P.2d 457 (1979); *Hayseeds, Inc.* v. *State Farm Fire & Casualty,* 352 S.E.2d 73 (W. Va. App. 1986). Three jurisdictions have applied the clear and convincing evidence standard: *Schultz* v. *Republic Ins. Co.,* 124 Ill. App. 3d 342, 464 N.E.2d 767 (1984); *Hutt* v. *Lumbermens Mutual Casualty Co.,* 95 App. Div. 2d 255, 466 N.Y.S.2d 28 (1983); *Northwestern National Ins. Co.* v. *Nemetz,* 135 Wis. 2d 245, 400 N.W.2d 33 (1986).

See 21B J. Appleman & J. Appleman, Insurance Law and Practice (1980) § 12682; 18 G. Couch, Insurance Law 2d (Rhodes Rev. 1983) § 74:667. Moreover, the preponderance of evidence rule was recently applied to a civil arson case by our Appellate Court. *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.,* 5 Conn. App. 579, 585, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986).

The minority of jurisdictions that apply the clear and convincing evidence standard to the arson special defense appear to rely upon the fact that the defense of arson requires proof of an act of a criminal nature, which must be established by a standard more exacting than the preponderance of the evidence. See *Mize* v. *Hartford Ins. Co.,* 567 F. Sup. 550 (W.D. Va. 1982); *Hutt* v. *Lumbermens Mutual Casualty Co.,* 95 App. Div. 2d 255, 466 N.Y.S.2d 28 (1983). We have never held, however, that proof of a criminal activity in a civil action must be established by a quantum of proof more stringent than that necessary to prove the underlying claim. *Mead* v. *Hustead,* 52 Conn. 53 (1884); *Munson* v. *Atwood,* 30 Conn. 102 (1861); see 30 Am. Jur. 2d, Evidence § 1169. Thus, it is readily apparent in property insurance cases that there is no similarity between the quantum of proof required for fraud and the quantum of proof required for arson. The trial court did not err in applying the preponderance of evidence rule to the special defense of arson.

II

The plaintiffs' second claim is that the trial court erred in finding that the defendant had sustained the burden of proving that the plaintiffs had the "opportunity" to cause the fire. The defendant relied on circumstantial evidence to prove this element of the arson special defense. Although any or all of the elements of arson may be proven by circumstantial evidence, "evi-

dence creating a mere suspicion or conjecture that [the] insured fraudulently burned the insured property is not sufficient." 18 G. Couch, supra, § 74:668; see *Cora Pub, Inc.* v. *Continental Casualty Co.*, 619 F.2d 482 (5th Cir. 1980). Like all of the elements of the arson special defense, opportunity must be proven by a preponderance of the evidence. 18 G. Couch, supra, § 74:667; see 21B J. Appleman & J. Appleman, supra, § 12682.

According to the memorandum of decision, the trial court found that the following evidence supported its finding of opportunity. A police officer noticed the fire at 5:38 a.m., investigated and found the front and back doors of the store locked. The fire fighters also found both doors locked when they arrived, and had to smash their way into the store with axes. After entering the store the firemen smelled a petroleum-type product, saw several gas cans on the floor and noticed that the floor was slippery. There was a separate fire in the utility room at the rear of the Carvel store. The door to this room required a different key to open it than the front and back door key to the store. This key was kept separately in the Carvel store. Neither the fire fighters nor the police saw any indication of a forced entry to the store. The fire marshall testified that the fire commenced at approximately 5 a.m. A Stamford arson task force member testified that he investigated the fire and found that the front and rear doors of the store had deadbolt locks, and both doors were locked shut during the fire. He reached this conclusion because his inspection revealed that a portion of the deadbolts had a different color from the remainder of the bolts, i.e., the exposed portions had burn marks that were different in color from the other portions that were in the door jambs. This evidence supports the conclusion that the arsonist had a key or was with someone who had a key to the store.

Testimony regarding the number and distribution of keys to the store was given by the named plaintiff, Frank Verrastro. He testified that only five keys to the store were outstanding. They belonged to: himself; his wife, Ann Marie; his brother Leonard; Jeff Bevegno, the night manager; and Thomas O'Brien, the principal officer of O'Brien Cleaning Service. O'Brien testified that he actually had two keys to the store, one key kept by him and one key that he had given to his employee, Tony Bennizio, who did the cleaning at the Carvel store. Bennizio had worked for him for about fourteen years and had been a loyal employee.

O'Brien testified further that neither he nor Bennizio had been at the store on the Sunday night of the fire. Bennizio also testified that he was not at the store on the night of the fire. He stated that although the cleaning service normally cleaned every evening, they did not do so on Sunday evenings, but instead cleaned early on Monday mornings. Frank Verrastro confirmed this arrangement in his testimony. Bevegno, the night manager, testified that he had worked in the store from 5 to 10 p.m. the night before the fire and that he was the last person to leave the store. He testified that he had locked the front and rear doors and had checked them to make sure they were shut. The trial court acknowledged that there was some indication that a prior night manager, Keith Gower, had a key to the store, but nevertheless relied on Bevegno's testimony that Gower had returned his key when he was terminated in 1979.

The plaintiff Leonard Verrastro testified that he was called by the Stamford police department and was informed of the fire at about 6:20 a.m. on September 22, 1980. He telephoned his brother, Frank, who also resided in Norwalk, and together they drove to the store in Stamford. Both Verrastro brothers denied having anything to do with the fire, directly or

indirectly. Both Verrastros testified that they had left their store at closing time the Sunday night before the fire, and had gone to their respective homes where they had remained until receiving notification of the fire.

The plaintiffs argue that it is possible that someone without a key climbed up on the roof over the store, wiggled down an air conditioning or ventilating duct while carrying the gas cans, set the fires, and then struggled back up the duct onto the roof. Because the gas cans were eleven and one-half inches wide and eighteen inches high, the ventilating duct was a cylinder type opening twelve inches in diameter, and the door leading to the shaft on the roof had been pried open only about eight inches, the trial court determined that neither the gas cans nor a man could have moved through the shaft.

The trial court noted that in 1977 there was a fire in the barber shop that is next door to the Carvel store, and that since 1977 the music store next to the Carvel store had been broken into ten times. Nonetheless, the trial court reasoned that the extensive crime in the area did not account for the Carvel store fire, which had three separate points of origin in the store and had been started by gasoline poured out of gas cans found on the premises by the fire fighters.

The plaintiffs also claim that the trial court reached conflicting conclusions when it determined that the plaintiffs had the opportunity to commit the arson even though it also determined that the plaintiffs were neither found nor seen in the area of the Carvel store. They argue that the element of opportunity requires proof that the suspect be at or near the scene of the fire at the time that it is started. To support their argument the plaintiffs rely on a number of criminal arson cases in which the defendant had been seen near the scene of the fire. We have found no case, however, that sup-

ports the plaintiffs' argument that a necessary element in either a criminal or civil arson case is that the suspect be found at or near the scene of the fire. This claim is without merit.

Careful review of the record indicates that the trial court did not err in finding that the plaintiffs had the opportunity to start the fire. Our conclusion is particularly influenced by the evidence that when the fire was discovered the store was locked with dead bolt locks, there was no sign of a forced entry, there were a limited number of keys to the store and a small number of people known to have had keys, and the fire concededly had an incendiary origin. Although circumstantial, the evidence is equally as probative as direct evidence of the element of opportunity. *State* v. *Rodriquez,* 200 Conn. 685, 692–93, 513 A.2d 71 (1986).

### III

The plaintiffs' third claim is that the trial court erred in prohibiting them from offering rebuttal evidence pertaining to matters upon which the defendant had the burden of proof. The plaintiffs argue that during the trial the defendant sought to sustain its special defense of arson by pointing to the facts that the Carvel store was locked when the firemen arrived and that there were only a limited number of keys outstanding. The plaintiffs sought to rebut the defendant's claim by recalling Frank Verrastro for additional testimony regarding outstanding keys to the store. Verrastro was asked: "[C]an you tell us who were the people who have held keys to your store from September, 1976, until September 22, 1980?" The trial court sustained the defendant's objection to the question, reasoning that it was part of the plaintiffs' direct case to show there were numerous keys outstanding at the time of the fire. The defendant argues that this area of inquiry had been explored at the time of the initial examination of

Verrastro. We need not consider whether the reasons set forth by the trial court for prohibiting the rebuttal evidence were correct, because in comparing the question objected to with Verrastro's questions and answers on direct examination regarding the Carvel store keys, the record indicates that the objection could have been sustained because the question was repetitive and the testimony sought was cumulative.[3] *State* v. *Asherman,* 193 Conn. 695, 719, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Watley,* 195 Conn. 485, 490, 488 A.2d 1245 (1985).

## IV

Next, the plaintiffs claim that the trial court erred in concluding that the defendant acted timely in rejecting the proof of loss. The plaintiffs filed an unsworn proof of loss with the defendant approximately three weeks after the fire, and again on October 13, 1980. Frank Verrastro's testimony indicated that he was aware that the October 13, 1980 submission was not complete. A fully executed sworn proof of loss was filed

---

[3] The pertinent direct examination of Frank Verrastro is as follows:

"Q. And there were a limited number of keys; did you hear him (prior witness) say that?

"A. Yes.

"Q. Now, can you tell us how many keys there were, to the best of your knowledge?

"A. Myself, my brother, my wife, the night manager, the cleaning service.

"Q. Now during the course of the four years prior to the fire, did you have different employees who would have access to the keys?

"A. Yes.

"Q. As far as you know, did they turn them in when they left, though?

"A. Yeah, they turned their keys in.

"Q. Okay. . . .

"The Court: are you saying you changed night managers during those four years and you changed cleaning services?

"The Witness: Yes, we did.

"The Court: But when you got a new night manager or new cleaner, the old one would give up his key.

"The Witness: Yes, he did."

on January 25, 1981, and was formally rejected by the defendant on March 9, 1981.[4] The policy provision in question required that the defendant "pay all adjusted claims within thirty (30) days after presentation and acceptance of the proof of loss." The plaintiffs' claim had not been adjusted nor had the proof of loss been accepted at any time by the defendant. Because the policy provision had not become applicable it does not insulate the plaintiffs from the defendant's special defense of arson.

In the absence of an applicable policy provision, the trial court properly looked to General Statutes § 38-98, which states in pertinent part that "[t]he amount of loss . . . shall be payable sixty days after proof of loss, as herein provided, is received . . . ." The March 9, 1981 rejection of the claim came within the statutory sixty day period. The proof of loss was rejected in a timely fashion.

## V

The plaintiffs' final claim is that the trial court erred in concluding that the insurer had not breached its implied covenant of good faith and fair dealing. Specifically, the plaintiffs claim that the defendant breached its duty by: (1) failing to notify the plaintiffs promptly that it was denying their claim; (2) failing to set forth fully and fairly the reasons for denying the claim; (3) rejecting the plaintiffs' figures with respect to losses without showing in what respect they were incorrect or without offering figures of its own; (4) insisting that the plaintiffs submit to examination under oath and produce hundreds of documents even though it had already decided it was not going to pay the claim; and (5) failing to conduct a prompt investigation into the plaintiffs'

---

[4] A sworn proof of loss was required by paragraph 8 (e) of form CD-4 of the policy. A sworn proof of loss is also required by General Statutes § 38-98.

claim, despite their desperate financial circumstances. We find that this claim is entirely without merit.

In *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 566, 479 A.2d 781 (1984), we noted that "[t]he implied covenant of good faith and fair dealing has been applied by this court in a variety of contractual relationships, including . . . insurance contracts; *Hoyt* v. *Factory Mutual Liberty Ins. Co.,* 120 Conn. 156, 159, 179 A. 842 (1935); *Bartlett* v. *Travelers Ins. Co.,* 117 Conn. 147, 155, 167 A. 180 (1933); cf. *Grand Sheet Metal Products Co.* v. *Protection Mutual Ins. Co.,* 34 Conn. Sup. 46, 375 A.2d 428 (1977) (tortious breach of covenant of good faith) . . . ." The concept of good faith and fair dealing is "[e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." *Magnan* v. *Anaconda Industries, Inc.,* supra, 567.

At the outset, we note that the examination of good faith and fair dealing in the settling of an insurance claim requires a case-by-case analysis. *West Haven* v. *United States Fidelity & Guaranty Co.,* 174 Conn. 392, 397, 389 A.2d 741 (1978). Here, the record indicates that the plaintiffs hindered the defendant's ability to process their claim promptly. For example, the named plaintiff's voluntary statement to the Stamford police contained numerous untruths regarding his financial situation, the partnership's financial situation and lawsuits pending against him in both his individual capacity and as a member of the partnership. Furthermore, the defendant did respond within the time period mandated by General Statutes § 38-98. Moreover, although the defendant did require the plaintiffs to submit to examinations under oath, a provision

of the insurance policy provided for such examination. The record reveals that the defendant undertook an extensive, lengthy investigation of the fire. Considering that the origin of the fire was incendiary, however, it was not unreasonable for the defendant to do so. The defendant did not breach the implied covenant of good faith and fair dealing.

There is no error.

In this opinion the other justices concurred.