[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff brings this action seeking damages from the defendant, The Hartford Fire Insurance Company (the "Hartford"), claiming that the defendant has wrongfully refused to pay on a fire insurance policy insuring the plaintiff's store, which was damaged by fire. The Hartford has filed special defenses alleging that the plaintiff failed to cooperate with the Hartford, that he made material misrepresentations or concealments and that the fire was an act of arson.
In February 1993, the plaintiff opened a convenience store and deli at 1351 North Main Street in Waterbury. The store was known as both the "Plaza Grocery and Deli" and the "Plaza Market and Deli" (the "deli"). The deli was located in a small strip shopping center with several other first floor tenants, including a pizza restaurant and laundromat. The second floor of the building contained residential apartments. The property was owned by John Gentile, a friend of the plaintiff's. A previous tenant had vacated the deli about a year earlier and the plaintiff, who had no experience operating any type of store, decided to enter the convenience store business.
After the store had been open for two months, the plaintiff obtained a fire insurance policy with a policy period from March 31, 1993 to March 31, 1994. In the early morning hours of July 26, 1993, fire was discovered in the deli. Although the fire had extinguished itself by the time fire fighting personnel arrived, the smoke in the store did cause damage. The plaintiff submitted a claim to the Hartford, which was denied for several reasons. This suit ensued. The plaintiff never reopened the deli.
The Waterbury Fire Marshal testified at trial that the fire at the deli was intentionally set. In fact, he found that there were two distinct fires set inside the deli. One fire began in the storage room at the rear of the deli. The door to the storage room was closed when fire fighters first entered the deli. A fire on the floor inside the storage room had burned some debris consisting of magazines and newspapers and then, in the opinion of the Fire Marshal, had extinguished itself from a lack of oxygen as a result of the storage room door being CT Page 12499-W closed.
A second fire had been set in the electric panel box which was on a wall outside the storage room. The Fire Marshal testified that sheetrock had been cut out from behind the electric panel on the wall and rolled up newspaper had been stuffed into the cavity and ignited. The newspaper had burned for a time, but then had extinguished itself. Photographs taken by the Fire Marshal reveal the obvious clumsiness of the effort to set the fires.
The plaintiff did not present any evidence which contravened the Fire Marshal's conclusion that both fires were set. The plaintiff contends, instead, that there is no evidence which links him to the setting of these fires. The Fire Marshal admitted on cross-examination that he discovered no physical evidence which links the plaintiff to the fires. However, such evidence is not necessary in order for the Hartford to sustain its arson defense.
The burden of proving exclusion of a risk otherwise insured against is on the insurer. Souper Spud, Inc. v. Aetna Casualty Surety Co., 5 Conn. App. 579, 585 (1985). The elements of the special defense of arson have been clearly identified by our Supreme Court.
 Generally, in order to establish a prima facie case of arson for purposes of denying coverage under an insurance policy, the insurer must establish that the fire was incendiary, that the insured, its agents or officers had an opportunity to cause the fire, and that such individuals had a motive for setting the fire. . . These elements must be proved by a preponderance of the evidence, which evidence may be either direct or circumstantial.
Id.
In Verrastro v. Middlesex Insurance Co., 207 Conn. 179
(1988), the Supreme Court rejected the very same claim made by the plaintiff here. The Verrastro plaintiffs contended that the trial court could not have found that the insureds had the opportunity to cause the fire because the court found that the plaintiffs were not seen or found to be near the scene of the fire. Id., 186. The Supreme Court stated, CT Page 12499-X
 We have found no case, however, that supports the plaintiffs' argument that a necessary element in either a criminal or civil arson case is that the suspect be found at or near the scene of the fire. This claim is without merit.
Id. The Supreme Court upheld the trial court's finding that the insureds had the opportunity to cause the fire despite the lack of any evidence that they were near the fire scene. The subordinate facts which supported the finding of opportunity to cause the fire were remarkably similar to the facts of the case before this court:
 Careful review of the record indicates that the trial court did not err in finding that the plaintiffs had the opportunity to start the fire. Our conclusion is particularly influenced by the evidence that when the fire was discovered the store was locked with dead bolt locks, there was no sign of a forced entry, there were a limited number of keys to the store and a small number of people known to have had keys, and the fire concededly had an incendiary origin. Although circumstantial, the evidence is equally as probative as direct evidence of the element of opportunity.
Id.
The fire at the deli was discovered at about 5:00 a.m. on July 26, when one of the upstairs tenants smelled smoke. The first tenant to smell the smoke awoke Carlene Merithew, an upstairs tenant who worked evenings in the deli. Merithew had a key to the deli and used it to unlock the dead bolt lock on the deli door to let fire department personnel enter. When she unlocked and opened the door, the burglar alarm signaled and Merithew turned the alarm off by using a code number. No evidence was presented of any forced entry.
The plaintiff was not at the scene of the fire. Merithew called the plaintiff at his girlfriend's house in Naugatuck to tell him of the fire. Boyette then got dressed and came to the deli.
There were "a limited number of keys to the store and a small number of people known to have had keys. . ." Id. The CT Page 12499-Y plaintiff and Merithew had keys. So did John Gentile, the owner of the building where the deli was located, his son John Gentile, Jr., who worked at the deli, and another deli employee, Gary Duquette.
In these respects, the facts before the court mirror the factual findings in Verrastro, which supported a finding that the property owner had the opportunity to cause the fire. In several other ways, however, the facts in the present case present a stronger showing of the plaintiff's opportunity to cause the fire.
The deli was normally open from 7:00 a.m. until 9:00 or 9:30 p. m. The plaintiff generally worked the morning hours, from 6:30 to 10:00 or 10:30 a.m. Other employees worked the balance of the day. Either Merithew or John Gentile, Jr. worked from 4:00 p. m. until closing. On July 25, 1993, the day before the fire, Merithew, who was pregnant with twins, was called in to work earlier than usual. The plaintiff called Merithew during the afternoon and said he would come in at 4:00 p. m. and work until closing. Merithew told the plaintiff she felt fine and could work until closing. Nevertheless, Boyette came to the deli and insisted that Merithew leave. She therefore left the deli at about 3:30 or 4:00 p. m. and went to the nearby pizza restaurant to work there.
By insisting on a change in Merithew's normal working hours, the plaintiff ensured that he was the very last employee at the deli on the night before the fire. The plaintiff's testimony was that he worked at the deli until about 9:30 p. m., when he mopped up, cashed out, activated the burglar alarm and locked the doors. One of the upstairs tenants corroborated the plaintiff's testimony, testifying that she saw the plaintiff turn out the store lights and leave the deli at 9:30 p. m. However, this tenant credibly testified that she saw a second man, whom she did not recognize, leave the deli at the same time that the plaintiff did. The plaintiff denied that there was anyone else with him when he closed up for the night.
At about 1:00 a.m. on July 26, 1993, at least two tenants awoke and smelled smoke. Each of them believed it was from an appliance in their respective apartments and went back to sleep until 5:00 a.m., when the fire and smoke were discovered.
The Waterbury Fire Marshal testified that in his opinion CT Page 12499-Z the fire started some time between the time when the deli closed for the night and the time when the tenants first smelled smoke, around 1:00 a.m. His opinion was not controverted by any other witness. Therefore, the plaintiff, who insisted on working the evening hours although it was not his normal routine to do so, was the last person observed to have left the deli in the hours before the fires began. When the fires were discovered in the morning, the doors to the deli were still locked and the burglar alarm was still activated. The court finds that the Hartford has established by a preponderance of the evidence that the plaintiff had the opportunity to set the fires.
The court further finds, based on the undisputed evidence, that the fires in the deli were incendiary in origin. The third element with respect to the arson defense is whether the plaintiff had a motive for setting the fire. This, too, was established by a preponderance of the evidence.
The plaintiff's motive in setting the fire was financial. In July 1993 the plaintiff was experiencing financial distress. He was delinquent in child support payments and also owed money to a number of the vendors for the deli. He had bounced checks to some of the vendors and some would deliver to the deli only on a "cash on delivery" basis. L.B.G. Distributors, which the plaintiff at one time identified as his "main supplier," made its last delivery to the deli on May 13. The balance owed L.B.G. was $1,731. As of three days before the fire, the balance in the deli's checking account was $143.34.
Carlene Merithew, who worked at the deli, testified that stock in the store was low during the week before the fire, particularly with respect to children's items, cigarettes, candy and ice cream. She asked the plaintiff if she should order more and he replied no, it was not needed.
The Fire Marshal's photographs as well as others admitted into evidence confirm the low stock in the deli. A photograph of the deli case shows that it is almost empty; photographs of the shelves in the store show empty areas. Photographs of the candy section of the deli show empty and virtually empty boxes on the shelves.
There is a second aspect to the plaintiff's economic motivation as well. The plaintiff, who had worked as a "laborer" for a number of different employers prior to opening CT Page 12499-AA the deli, admitted that he did not intend to stay in the deli business for a lengthy period of time. He was looking for an "easy" job. It is undisputed that on April 15, 1993, only two months after opening the deli, the plaintiff signed a listing agreement seeking to sell the deli business for $79,900. The plaintiff testified that he was not interested in selling the deli, that he put it on the market just to see if he could "get a nibble."
The court found the plaintiff's testimony on this point lacking in credibility. The plaintiff, a three-time convicted felon, was not credible in his denial of interest in selling the deli business. In fact, the court finds, the plaintiff began the deli business, one in which he had absolutely no experience, hoping to sell it quickly and at a profit. He paid the employees in cash, kept no records with respect to their wages, did not withhold income taxes nor file a sales tax return or pay income taxes for the business. Clearly, this was intended to be a short-lived venture. When there were no offers to purchase the deli business, the plaintiff's plan to sell the business and realize significant profit was seemingly thwarted. After the fire, the plaintiff made no attempt to reopen the deli, even while his claim for insurance proceeds was pending with the Hartford. He submitted to the Hartford a proof of claim for approximately $33,000. Based on these facts, the court finds that the plaintiff was further motivated to set the fire by his desire to leave the deli business while simultaneously realizing a significant sum of money.
The plaintiff contends that he had no motivation to set the fire because he was doing so well financially at the deli. However, this claim presupposes the truthfulness of the plaintiff's testimony that he was realizing $500 to $600 per day in profit. The court did not find that testimony credible. Although Boyette twice testified that he was making $500 to $600 per day in profit, at a later point in the trial, he contradicted this testimony by testifying that he made $1,200 to $1,300 per day in profit. The court rejects the plaintiff's contention that he was doing so well financially at the deli that he had no motive to set the fires.
The plaintiff's final claim with respect to the arson defense is that this court is bound by a finding made in a suit brought by John Gentile, the owner of the strip shopping center where the deli was located, against the insurance company which CT Page 12499-BB insured the real estate against fire loss. The plaintiff contends that the judge who heard the Gentile case rejected an arson defense in that case and that the Hartford should be collaterally estopped from relitigating the arson defense in this case. The plaintiff asserts that mutuality of the parties is no longer required for collateral estoppel, relying onGriffin v. Parker, 22 Conn. App. 610 (1990), rev'd. on other grounds, 219 Conn. 363 (1991). The plaintiff's claim of collateral estoppel is without merit.
The plaintiff in Griffin v. Parker brought suit for damages for personal injuries sustained as a result of being shot by the defendant. The defendant had been convicted of assault in the first degree as a result of this assault on the plaintiff. The issue on appeal was whether the trial court erred in applying collateral estoppel based on the criminal conviction to preclude relitigation of the issue as to whether the defendant assaulted the plaintiff. The defendant contended that because the plaintiff/victim was not a party or in privity with a party to the criminal case, the use of collateral estoppel was improper.
The Appellate Court upheld the use of collateral estoppel, holding that a prior conviction estops a party in a later civil suit from contesting facts which were necessarily established in the criminal proceeding. Id., 623. The court acknowledged that the rule of mutuality for collateral estoppel was being relaxed to permit its application on these facts. In no way, however, did the Appellate Court hold or indicate that the rule of mutuality for collateral estoppel was being abandoned for all circumstances.
Parker, the defendant in the civil suit, was also the defendant in the criminal case. He had had an opportunity in the criminal action to present evidence controverting the charge that he assaulted the plaintiff. The Appellate Court was influenced by the fact that despite the higher standard of proof, the defendant was found guilty of the assault. The court found that he should not be able to relitigate the issue.Griffin v. Parker, supra, 22 Conn. App. 623.
Griffin v. Parker is clearly distinguishable from the case before the court. The prior case in question, Gentile v. GreatAmerican Insurance Company, Superior Court, judicial district of Waterbury Docket No. 0118509 (January 18, 1995), was not a CT Page 12499-CC criminal case, but a civil case brought by a different claimant on a different insurance policy issued by a different insurance carrier. The Hartford has never had a previous opportunity to present evidence on its claim of arson. Our Supreme Court has noted its agreement with the Appellate Court's holding inGriffin v. Parker and has emphasized,
 [w]henever collateral estoppel is asserted, but especially in those cases where there is a lack of mutuality . . . the court must make certain that there was a full and fair opportunity to litigate.
Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 306 (1991). To hold that the Hartford is collaterally estopped from litigating its claim of arson in this action when it has not previously had the opportunity to do so would constitute a clear deprivation of due process and a grossly distorted misreading ofGriffin v. Parker.
The court finds for the defendant on its special defense of arson. In light of this finding, it is not necessary to address the remaining special defenses. Judgment is entered for the defendant, with costs.
VERTEFEUILLE, J.