### CITIBANK (SOUTH DAKOTA), N.A. v. MARK GIFESMAN (AC 20556)

Spear, Dranginis and Peters, Js.

---

Argued February 27—officially released May 1, 2001

*Jonathan J. Klein,* for the appellant (defendant).

*Robert J. O'Hara,* with whom, on the brief, were *Steven M. Greenspan* and *Mario R. Borelli,* for the appellee (plaintiff).

*Opinion*

PETERS, J. In this commercial appeal, a bank issued a secondary credit card at the request of its customer, the holder of a primary credit card. The applicable credit card agreement imposed liability on the primary cardholder for sums charged against the secondary credit card. The principal issue before us is whether § 1643 of the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., overrides the credit card agreement so as to excuse the defendant, in whole or in part, from

making the payments requested by the issuer. This is an issue of first impression in this state. The trial court held the primary credit card holder fully liable. We agree.

The plaintiff, Citibank (South Dakota), N.A., brought an action to collect $48,825.37 from the defendant, Mark Gifesman, for charges on two credit card bills that arose from the use of an authorized secondary credit card in the name of Alexei Popov, then a resident of Russia. The defendant denied his liability and filed a counterclaim in three counts. He charged the plaintiff with breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The court ruled in favor of the plaintiff both on its own claim and on the counterclaim filed by the defendant. The defendant has appealed from both parts of the judgment against him.

## LIABILITY OF THE DEFENDANT
## TO THE PLAINTIFF

Throughout this case, the defendant has relied on 15 U.S.C. § 1643 as the source of his defense against liability to the plaintiff. He has not challenged the validity or applicability of the terms of the credit card agreement that impose such liability on him.[1] Under federal law,

---

[1] The Citibank Classic Card Agreement includes the following: "*Additional Cards*: You may request additional cards on your account for yourself or others by contacting Citibank Customer Service. You are responsible for the use of each card according to the terms of this Agreement."

The defendant claims that the card agreement relieved him from liability for charges in an amount greater than that stated as his personal credit limit. Although the agreement contained such a credit limit for use of the card, the agreement also allowed the defendant to increase his credit limit or use the card beyond the credit limit upon payment of a small penalty. In light of the defendant's contract right to exceed his credit limit, the plaintiff's claim for reimbursement is consistent with the terms of the agreement.

the defendant's liability may not exceed $50 if the plaintiff fails to prove[2] that disputed credit card charges were made by a person with "actual, implied, or apparent authority for such use *and* from which the cardholder receives no benefit."[3] (Emphasis added.) 15 U.S.C. § 1602 (o). The court found that the plaintiff had established the defendant's ineligibility for such relief.

This court's review of the trial court's factual findings is limited. Unless a finding of fact is clearly erroneous, it must be sustained on appeal. Practice Book § 60-5; see *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980), and its progeny. It does not matter whether the findings are supported by indirect or direct evidence. See, e.g., *State* v. *Figueroa*, 235 Conn. 145, 163–64, 665 A.2d 63 (1995); *State* v. *Boucino*, 199 Conn. 207, 228, 506 A.2d 125 (1986); *State* v. *Mazzetta*, 21 Conn. App. 431, 433–35, 574 A.2d 806, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990). We are not persuaded that the findings in this case were clearly erroneous.

The defendant focuses much of his argument on his claim that the court improperly found that unidentified users of a secondary credit card had apparent authority

[2] Title 15 of the United States Code, § 1643 (b), sets forth the burden of proof as follows: "In any action by a card issuer to enforce liability for the use of a credit card, the burden of proof is upon the card issuer to show that the use was authorized or, if the use was unauthorized, then the burden of proof is upon the card issuer to show that the conditions of liability for the unauthorized use of a credit card, as set forth in subsection (a) of this section, have been met."

[3] The scope of apparent authority is discussed in the 2 Restatement (Second), Agency § 8, pp. 30–36 (1958). Although federal statutes are generally interpreted and applied in accordance with federal principles of law, the United States Supreme Court repeatedly has held that general statutory references to agency should be addressed by common-law authorities on that subject, including the Restatement (Second) of Agency. See *Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742, 755, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Meritor Savings Bank, FSB* v. *Vinson*, 477 U.S. 57, 72, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).

to use the card and that such use on their part subjected the defendant to liability. The undisputed facts show that, in April, 1995, the defendant requested from the plaintiff a secondary card in the name of Popov, a person unknown both to the plaintiff and to the defendant. The defendant's request was made at the behest of Vladislav Kharkover, a Russian acquaintance. Kharkover agreed to pay for charges arising out of the use of the Popov card and to pay the defendant a $25 monthly fee.[4] To facilitate use of the Popov card abroad, the defendant sent Kharkover supporting documentation, including a copy of his own social security card. The Popov card was used extensively in Germany between July 18 and July 28, 1995, resulting in charges totaling $36,076.66.[5]

On July 20, 1995, the plaintiff notified the defendant of the attempted use of the Popov card for cash advances,[6] the only activity associated with the Popov card of which the plaintiff was then aware.[7] The following day, the plaintiff again contacted the defendant to ascertain, once more, whether the defendant wanted to block further use of the Popov card. On both occasions, the defendant asked the plaintiff not to cancel

[4] The record does not disclose the total amount that Kharkover paid to the defendant.

[5] This amount is far greater than the defendant's credit limit, although none of the purchases exceeded the credit limit individually. The Citibank Classic Card Agreement provides: *"Exceeding Your Credit Line:* We will charge your account an over the credit line fee of $10 for each billing period in which your New Balance exceeds your credit line. This fee will be added to your purchase balance."

[6] Notably, on July 18, 1995, one of the cash advance requests was made using the Popov card, and a passport was presented for identification. That request was honored.

[7] Under the ground rules established by Visa International, to which the plaintiff subscribed, the plaintiff had no opportunity to acquire immediate knowledge of cardholder purchases below a designated floor limit. The defendant argues that these rules should have been disclosed to him. The credit card agreement does not so provide.

or block the card. On July 22, 1995, the plaintiff recorded the Popov card as possibly lost or stolen. The defendant never requested cancellation of the Popov card, and the plaintiff did not do so sua sponte.[8]

On the basis of this record, the court found that the defendant had conferred apparent authority on Popov to use the credit card. The defendant disputes the relevance of that finding in light of the plaintiff's acknowledged inability definitively to establish the identity of the users of the card. In the defendant's view, without such proof of identity, the defendant is shielded from liability. The defendant has not indicated how such a burden could be met when the issuer has no way of obtaining information about the ultimate users of a secondary card. As the court noted, if anyone had the better opportunity to obtain such information, it would have been the defendant, not the plaintiff.

The court found that, more likely than not, the user who obtained the cash advance was Popov. It found that a third person reasonably could believe that the user in question had the power to act on the authority of the defendant. Numerous cases cited by the plaintiff support the court's holding. See *Towers World Airways, Inc.* v. *PHH Aviation Systems, Inc.*, 933 F.2d 174 (2d Cir. 1991); *Draiman* v. *American Express Travel Related Services Co.*, 892 F. Sup. 1096 (N.D. Ill. 1995); *Walker Bank & Trust Co.* v. *Jones*, 672 P.2d 73 (Utah 1983), cert. denied sub nom. *Harlan* v. *Interstate Bank of Utah Co.*, 466 U.S. 937, 104 S. Ct. 1911, 80 L. Ed. 2d 460 (1984).

---

[8] The defendant claims that his decision not to cancel the Popov card might have been different if he had been informed about the manner in which credit card use is managed and monitored. Specifically, the defendant did not know that floor limits allowed purchases to be charged, as long as they fall below such limits, without advance bank authorization. The defendant does not claim that the credit card agreement requires such disclosure. The defendant has not identified any other specific basis for such a requirement.

In our review of this finding, we are struck by how little has been disclosed about the transactions underlying this litigation. The record reveals nothing about the nature of the relationship between the defendant, Popov and Kharkover or of the intended use of the Popov card. We do not know whether the defendant has attempted to recover the amounts at issue from Kharkover in his role as guarantor. For that matter, no documentation attests to that role. We know nothing about how the card came to be used in Germany rather than in Russia. In short, the record raises more questions than it answers.

We conclude, therefore, that judicial prudence warrants our waiting for another case to decide the novel issue of the scope of authorized use of a secondary credit card. This course is open to us in light of the court's finding, in addition to its finding on authorization, that the defendant was not entitled to protection under the federal Truth in Lending Act because he had received a benefit for his role in the procurement of the Popov card.

The defendant does not dispute that he received a monthly stipend of $25 from Kharkover. He does not claim that the stipend arose from some other unrelated transaction. Similarly, he does not claim that only payments by Popov himself would qualify as a "benefit." He does not argue that the amount of the benefit was too insubstantial to qualify as a "benefit" as that term is used in the federal statute's definitional section, 15 U.S.C. § 1602 (o).[9] Indeed, he has not revealed whether that stipend continues to be paid or when it was terminated.

---

[9] Title 15 of the United States Code, § 1602 (o), provides: "The term 'unauthorized use,' as used in section 1643 of this title, means a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit."

The defendant argues instead that, pursuant to 15 U.S.C. § 1643 (a),[10] *unauthorized* uses may not be charged against a credit card holder. He apparently fails to recognize the significance of the definition of "unauthorized" use in 15 U.S.C. § 1602 (o), which excludes from that category any transaction in which the cardholder receives any "benefit." See footnote 9. Under that definition, the Kharkover stipend, without more, made use of the Popov card an *authorized* use thereof.

The parties agree that the object of the federal Truth in Lending Act was to provide protection only for consumer credit card holders. For the purposes of determining authority for the use of a secondary credit card, Congress chose to define the dividing line between consumer and commercial transactions by reference to whether the cardholder had received any "benefit" from the issuance of such a credit card. Contrary to the view of the defendant, on the issue of authorized credit card use, the act did not incorporate the possibly broader definition of "consumer" contained in 15 U.S.C. § 1602 (h).[11] To the extent that these definitional sections are

---

[10] Title 15 of the United States Code, § 1643 (a), provides: "Limits on Liability. (1) A cardholder shall be liable for the unauthorized use of a credit card only if—

"(A) the card is an accepted credit card;

"(B) the liability is not in excess of $50;

"(C) the card issuer gives adequate notice to the cardholder of the potential liability;

"(D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card, which description may be provided on the face or reverse side of the statement required by section 1637 (b) of this title or on a separate notice accompanying such statement;

"(E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and;

"(F) the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it."

[11] Title 15 of the United States Code, § 1602 (h), provides: "The adjective 'consumer', used with reference to a credit transaction, characterizes the

in conflict, the specifically applicable section, 15 U.S.C. § 1602 (o), takes precedence over the more general one. *State* v. *State Employees' Review Board,* 239 Conn. 638, 653, 687 A.2d 134 (1997).

In light of the specific provisions of the Truth in Lending Act, the defendant is mistaken in his assertion that payment of the stipend "for accommodating his friend's business" had "no bearing" on whether the Popov card had been put to unauthorized use. By its own unambiguous terms, the Truth in Lending Act provides the necessary bearing.

We conclude, therefore, that the plaintiff met its burden of proof that enforcement of the terms of the credit card agreement against the defendant does not violate the federal Truth in Lending Act. Because the defendant received a monetary benefit from the issuance of the secondary credit card to Popov, the subsequent use of that card was authorized as a matter of both federal and state law.

## THE DEFENDANT'S COUNTERCLAIM

The defendant's counterclaim contained three counts. The defendant claimed that the plaintiff had failed to honor obligations arising out of (1) its fiduciary duty to the defendant, (2) an implied covenant of good faith and fair dealing, and (3) the provisions of CUTPA. The court found that the defendant had not proven any of these claims. We agree.[12]

transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are subject of the transaction are primarily for personal, family, or household purposes." The defendant notes that he was a student when he requested issuance of a credit card to Popov. It is not uncommon for students to engage in commercial transactions.

[12] We disagree with the defendant's assertion that the court improperly relied on a finding of negligence on his part as a basis for its decision rejecting the counterclaim. The court's findings on the issues raised in the counterclaim focused on the lack of evidentiary support for these claims, on which the defendant bore the burden of proof. The defendant's own

The defendant challenges the validity of each of the court's rulings on its counterclaim. As noted in our discussion of the findings with respect to the plaintiff's complaint, the court's judgment is reversible only if we conclude that the findings were clearly erroneous.

With respect to the claim of breach of fiduciary duty, the defendant's argument focuses on the plaintiff's alleged misconduct with regard to the credit card transaction herein at issue. Missing from this argument is a factual showing of any basis for imposing a fiduciary duty on the plaintiff. The credit card agreement did not so provide. The parties were not in the kind of relationship in which a fiduciary duty is automatic, such as a partnership or trusteeship. See *Oakhill Associates* v. *D'Amato*, 228 Conn. 723, 727, 638 A.2d 31 (1994). The defendant does not claim that the credit card relationship automatically made the plaintiff a fiduciary. In the absence of a persuasive showing of a fiduciary relationship, it would be pointless to discuss this claim any further.[13]

With respect to the claim of breach of the implied covenant of good faith and fair dealing, the defendant contends that the plaintiff had a duty to safeguard him from the unauthorized use of the Popov card. The credit card agreement makes a person who requests and receives a secondary credit card unconditionally responsible to reimburse the plaintiff for claims arising out of authorized uses of the secondary card. See footnote 1. The difficulty in interpolating an implied cove-

conduct was particularly relevant to his claimed right to recover under an implied covenant of good faith and fair dealing.

[13] The defendant cites *Konover Development Corp.* v. *Zeller*, 228 Conn. 206, 635 A.2d 798 (1994), in support of his claim that there was a fiduciary relationship in this case. The defendant misreads *Konover Development Corp.* The language quoted in the defendant's brief describes the burden of proof that applies once a fiduciary relationship has been shown to exist. Id., 229–30. We can discern no basis for using that burden of proof to determine whether there was a fiduciary relationship in the first place.

nant into this contractual provision is that our Supreme Court has ruled that such an interpolation is unwarranted. The implied covenant "cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." (Internal quotation marks omitted.) *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 190, 540 A.2d 693 (1988), quoting *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 567, 479 A.2d 781 (1984). In *Verrastro*, as in this case, the court noted the relevance of the claimant's own conduct to the determination of the applicability of an implied covenant. *Verrastro* v. *Middlesex Ins. Co.*, supra, 190. In this case, the defendant has made no effort to distinguish *Verrastro*.

With respect to the claim of CUTPA violations, the defendant argues that the plaintiff's actions in conducting its credit card business were so egregious as to fall within the proscriptions of that act. Although he adverts to the possibility that the plaintiff's conduct might be considered unlawful per se, he recognizes that no court has yet so held. We are not persuaded that we should come to a contrary conclusion. The defendant's central claim focuses instead on the proposition that, by failing to explain the risks inherent in the issuance of a secondary credit card, the plaintiff caused him to suffer substantial injury. See *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 736 A.2d 824 (1999). In *Hartford Electric Supply Co.*, our Supreme Court stated, however, that proof of substantial injury requires, inter alia, a showing that the injury is one that could not reasonably have been avoided by the claimant. Id., 367–68. The defendant's conduct of procuring a secondary card for a stranger and failing himself to monitor its uses indicates that he cannot meet this burden of proof. We note again that, except for its reference to Kharkover, the record contains no evi-

dence to illuminate how the defendant became engaged in this transaction.

On all of the counts of the counterclaim, we are persuaded that the court made findings of fact that were not clearly erroneous. In light of these findings, we conclude that the defendant is not entitled to recover on his counterclaim.

The judgment is affirmed.

In this opinion the other judges concurred.