McCAULEY ENTERPRISES,
INC., et al.

v.

NEW HAMPSHIRE INSURANCE CO.

v.

Paul VOLPE.

Civ. No. H–85–493 (PCD).

United States District Court,
D. Connecticut.

July 21, 1989.

Eliot B. Gersten, Gersten & Clifford, Hartford, Conn., for plaintiffs.

Raymond T. DeMeo, Robinson & Cole, Hartford, Conn., for defendant, New Hampshire Ins. Co.

Lewis K. Wise, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, Conn., for third-party defendant, Volpe.

### RULING ON MOTION TO RECONSIDER

DORSEY, District Judge.

Defendant, New Hampshire Insurance Co. ("New Hampshire"), moves for reconsideration of this court's April 20, 1989, ruling on cross-motions for summary judgment. In that ruling, disputed issues of fact were found to exist as to whether the fire insurance policy in question could be reformed. Defendant asserts that whether or not the insurance policy is reformed, plaintiffs, Raymond Esposito and McCauley Enterprises, Inc. ("McCauley"), are not entitled to recovery as a matter of law because: (1) if the policy is not reformed, McCauley has no insurable interest in the property and Esposito is entitled to no recovery because he is not a named insured; and (2) if the policy is reformed, Esposito and Volpe become co-insureds and Esposito would be barred from recovery because of the arson of his co-insured, Volpe. Defendant also contends that plaintiffs have failed to establish, as a matter of law, that it is in breach of its implied covenant of good faith and fair dealing. The facts are set forth in the ruling of April 20, 1989, familiarity with which is assumed.

*Discussion*

#### A. *Innocent Co-insured Rule*

If the insurance policy is reformed to reflect Esposito's ownership in the property, then Esposito and Volpe, as co-owners are co-insureds. The issue then becomes whether Esposito is barred from recovery because of the arson of his co-insured, Volpe. For the purposes of this motion, Esposito is assumed to be an "innocent co-insured," i.e., that he had no knowledge of Volpe's plans to burn down the building nor means to prevent it.

Defendant contends that Volpe's intentional burning of the insured property violates an express term of the policy and bars Esposito's recovery as an insured. The policy provides that "this Company

shall not be liable for loss occurring ... while the hazard is increased by any means within the control of the insured." Defendant asserts that "[t]he general rule is that an innocent co-insured, whether partner ... or spouse ... cannot recover on a fire insurance policy where the property wilfully was destroyed by the other co-insured." *Cooperative Fire Ins. Ass'n of Vermont v. Domina,* 137 Vt. 3, 399 A.2d 502 (1979). *See also* 5 J. Appleman, *Insurance Law & Practice,* § 3113 at 390–91 (1970). Cases following this general rule focus either on the relationship of the co-insureds, i.e., spousal, business, etc., or the underlying property interest, i.e., tenancy by the entirety, joint tenancy, etc. *See St. Paul Fire & Marine Ins. v. Molloy,* 291 Md. 139, 433 A.2d 1135, 1139–40 (1981) (collecting cases).

Recently, courts have moved away from this analysis and focused instead on the intent of the parties as expressed in the insurance contract. *See, e.g., Sales v. State Farm Fire & Cas. Co.,* 849 F.2d 1383, 1384 (11th Cir.1988); *Bryant v. Allstate Ins. Co.,* 592 F.Supp. 39, 40 (E.D.Ky. 1984); *Republic Ins. Co. v. Jernigan,* 753 P.2d 229 (Colo.1988). Thus, whether an innocent co-insured can recover depends upon whether the obligations and interests of the co-insureds under the insurance contract are considered to be joint or several. *Molloy,* 291 Md. 139, 433 A.2d at 1140; *see also* Annotation, 11 A.L.R. 4th 1228 (1982) (right of innocent insured to recover under fire policy covering property intentionally burned by another insured). Any other analysis would be in violation of the court's obligation to construe a contract of insurance just as any other contract and enforce it according to its terms. *See Bryant,* 592 F.Supp. at 41. As an issue of first impression in Connecticut, the district court must best assess "what the state court would rule to be its law." *Holt v. Seversky Electronatom Corp.,* 452 F.2d 31, 34 (2d Cir. 1971). It is found that Connecticut would follow the more recent line of cases adopting a contract approach to the doctrine of innocent co-insureds. *See, e.g., Sales,* 849 F.2d at 1384–85. Such an analysis requires a focus on the intent of the parties as expressed in the insurance contract. If there are ambiguities in the contract, the court must prefer the interpretation which will sustain the claim. *See Weingarten v. Allstate Ins. Co.,* 169 Conn. 502, 509, 363 A.2d 1055 (1975); *Raffel v. Travelers Indem. Co.,* 141 Conn. 389, 392, 106 A.2d 716 (1954); *see also Krupp v. Aetna Life & Cas. Co.,* 103 App.Div.2d 252, 479 N.Y.S.2d 992 (1984) (under modern approach, courts generally look to the policy language and use traditional rules of contract construction to determine whether the rights of the insureds are joint or severable).

The exclusion relevant to the insured real property provides that defendant "shall not be liable for loss occurring ... while the hazard is increased by any means within the control or knowledge of the insured." The phrase "the insured" is not clear where there are joint interests in a single piece of real property. The phrase does not clearly define the obligation to refrain from such conduct as joint or severable. *See Spezialetti v. Pacific Employers Ins. Co.,* 759 F.2d 1139, 1141 (3d Cir. 1985). However, the definition of an "insured" evidences intention that the obligations be several rather than joint. Specifically, the policy definition of "insured" provides that "[t]he insurance afforded applies *separately to each insured* against whom claim is made or suit is brought, except with respect to the limits of the company's liability." Although the quoted language does not specifically define the parties' rights with respect to the exclusion in issue, it does express an intent to treat each insured separately. Further, the term "the insured" has been construed to "mean a specific insured, namely, the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy." *Hildebrand v. Holyoke Mut. Fire Ins. Co.,* 386 A.2d 329, 331 (Sup.Ct.Me.1978).

With respect to a fire insurance policy covering the interests of more than one insured, ... there is much to commend the view that, unless the terms thereof are plainly to the contrary and in some fashion clearly called to the attention of the insureds, the obligation of the carrier

should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent co-insureds to the extent of their respective interests in the property involved.

*Howell v. Ohio Cas. Ins. Co.,* 130 N.J.Super. 350, 327 A.2d 240, 243 (App.Div.1974). *See also Haynes v. Hanover Ins. Co.,* 783 F.2d 136, 138 (8th Cir.1986). When read in conjunction with the policy exclusion in issue and in accordance with the court's duty to construe ambiguous terms in favor of coverage, the policy definition of an "insured" supports the conclusion that the interests of the co-insureds are severable. Accordingly, Esposito, as an innocent co-insured, in the event the policy is reformed, would not be barred from recovery by reason of the conduct of his co-insured, Volpe.[1]

■ With respect to the personal property, the policy provides that defendant shall not be liable for loss occurring as a result of "any fraudulent, dishonest, or criminal act done by or at the instigation of *any insured,* partner, or joint adventurer in or of any insured, [or] *an officer,* director or trustee of *any insured.*" (Emphasis added). The language "any insured" has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured. *See, e.g., Sales,* 849 F.2d at 1385; *Spezialetti,* 759 F.2d at 1141–42. Further, Volpe's conduct would be attributable to McCauley due to his status as an officer of that corporation. Accordingly, both Esposito and McCauley would be barred, as a matter of law, from recovery of the policy proceeds with respect to the personal property destroyed based on Volpe's conduct in causing the arson of the property in question.

### B. *Implied Covenant of Good Faith and Fair Dealing*

■ Plaintiffs allege in Count Three that "[t]he failure of the defendant New Hampshire Insurance Company to pay the proceeds of the policy, based upon its investigation and discovery which has been conducted in this action, is a breach of its implied covenant of good faith and fair dealing." Under count Three, plaintiffs seek "attorney's fees, punitive damages and related costs." Defendant moves for summary judgment on this claim arguing that the mere fact that it refused to pay a claim under the policy, even assuming that the refusal was erroneous, is not sufficient to sustain a claim in bad faith.

Connecticut has recognized "an independent cause of action in tort arising from an insurer's common law duty of good faith." *Buckman v. People Express, Inc.,* 205 Conn. 166, 170, 530 A.2d 596 (1987). "[I]n every contract of insurance the duty 'to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy' was necessarily implied." *Grand Sheet Metal Prod. Co. v. Protection Mut. Ins. Co.,* 34 Conn.Sup. 46, 50, 375 A.2d 428 (1977), quoting *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 573, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). The doctrine of good faith and fair dealing is essentially "a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the expressed terms of a contract, unless, possibly, those terms are contrary to public policy." *Magnan v. Anaconda Indus., Inc.,* 193 Conn. 558, 567, 479 A.2d 781 (1984). *See also Verrastro v. Middlesex Ins. Co.,* 207 Conn. 179, 190, 540 A.2d 693 (1988).

The policy provides that "[t]he amount of loss for which this company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by the Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided." The insured is required to give immediate written notice of any loss to the insurer "and within sixty

---

1. Since the parties have not briefed the issue of what Esposito would be entitled to recover for damage to his interest in the property should he prevail in reforming the policy and establishing liability thereunder, the court declines to address that issue at this time.

days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured" as to certain specified information. It is undisputed that the proofs of loss were filed on August 16, 1984, more than sixty days after the loss. Although the delay was only three days, it was still in contravention of the express terms of the policy. On December 5, 1984, defendant rejected the proofs of loss as untimely and for the failure to include certain required information, including the time and origin of the fire, complete recital of title and interest in the property, and the amount of loss and damage.[2] In rejecting the proofs of loss, defendant expressly reserved all of its rights and defenses under the policy.

Plaintiffs contend that the record contains sufficient facts to establish that defendant has in fact acted unfairly, in bad faith and with reckless indifference to the rights of plaintiffs. In particular, plaintiffs assert that by March 4, 1985, the date of Leduc's confession, defendant was in possession of all material facts relevant to its defense. However, plaintiffs argue that defendant made no effort to settle or resolve the claim until it denied the claim in its answer to plaintiffs' complaint on December 26, 1985.[3] Plaintiffs also contend that defendant did not reject the proofs of loss within the time required by both the policy and Conn. Gen. Stat. § 38–98.[4] Plaintiffs contend that the "untimely rejection of plaintiffs' proofs of loss statement absent prejudice to the insurer, the delays

instigated by defendant by pitting the plaintiff Esposito against his former partner, and the manipulation of the contract terms to make it virtually impossible for the plaintiff to reasonably comply, all support an inference of a wrongful motive on the part of defendant."

Plaintiffs have produced no evidence in support of an inference of bad faith. It is undisputed that the proofs of loss were untimely. That the deficiencies in the proofs of loss were technical and resulted in no prejudice to defendant does not make defendant's rejection wrongful or in bad faith. Exercise of a lawful right cannot be either wrongful or in bad faith. Plaintiffs had the right to bring suit arguing that they be excused from strict compliance with the requirements for proof of loss to "avoid a disproportionate forfeiture." *Murphy*, 206 Conn. at 413, 538 A.2d 219. The delay in rejecting the proofs of loss did not prejudice plaintiffs. A timely rejection would not have permitted plaintiffs to resubmit the proofs, since the sixty-day period for filing such proofs had expired.

Second, the failure to deny coverage formally or settle was not unreasonable where defendant was conducting further investigation of the origin of the fire. After the proofs of loss had been rejected, there was no formal claim pending with defendant. Having rejected the proof of loss, reserving its rights and defenses under the policy, defendant's continued investigation was to protect its interests in the event plaintiffs challenged the rejection of the proofs of loss. Such conduct cannot support an in-

---

**2.** The Connecticut Supreme Court has recognized that "absent a showing of material prejudice, an insured's failure to give timely notice does not discharge the insurer's continuing duty to provide insurance coverage." *Aetna Cas. & Surety Co. v. Murphy*, 206 Conn. 409, 418, 538 A.2d 219 (1988). The existence or nonexistence of prejudice from delayed notice is an issue of fact with the burden of proof on the insured. *Id.* at 419, 538 A.2d 219.

**3.** Defendant contends that it has never formally denied plaintiffs' claim and that, since it rejected the proofs of loss under the policy, there was never a proper claim on the policy. This position conflicts with the testimony of Paul

Randall, defendant's representative, and defendant's amended answer which admitted the allegation of Paragraph 11 of the complaint that "defendant has denied coverage and refused and still refuses to pay the loss."

**4.** Section 38–98 contains the identical language as the policy in issue regarding when a loss is payable. The Connecticut Supreme Court has construed § 38–98, which states that "[t]he amount of loss ... shall be payable sixty days after proof of loss, as herein provided, is received," to require rejection of a proof of loss within the statutory sixty-day period. *Verrastro*, 207 Conn. at 189, 540 A.2d 693.

ference of bad faith handling of an insurance claim.

Finally, plaintiffs contend that had defendant been sincere in its efforts to protect the rights of plaintiffs more proper courses of action would have been to either deny liability once it was reasonably sure that one of the insureds was involved in the arson or, recognizing that the innocent co-insured theory was one of first impression, a declaratory judgment on the issue of coverage could have been instituted. However, as previously noted, plaintiffs' untimely proofs of loss triggered no obligation to pay under the policy. Further, when a good faith legal controversy exists, such as in this case, the insurer's withholding of the policy proceeds cannot be found to be in bad faith, even if the insurer's position is ultimately found to be erroneous. *Cf. Dronge v. Monarch Ins. Co. of Ohio,* 511 F.Supp. 1, 5 (D.Kan.1979). As plaintiffs have not come forth with any evidence from which it could be inferred that defendant failed "to act in good faith and fairly in handling the claims of an insured, namely [its] duty not to withhold unreasonably payments due under a policy," *Doyle v. St. Paul Fire & Marine Ins. Co.,* 583 F.Supp. 554, 555 (D.Conn.1984), defendant's motion for summary judgment on Count Three of plaintiffs' amended complaint is granted.

*Summary*

Upon reconsideration, defendant's motion for summary judgment on Count One is granted with respect to plaintiffs' claim for personal property loss under the policy and denied as to the real property loss. Defendant's motion for summary judgment on Count Three is granted.

The outstanding Trial preparation Order shall be complied with as follows: Section A: August 11, 1989; Section B: August 25, 1989; and Second D: September 15, 1989.

SO ORDERED.