(925 P.2d 452)
No. 72,524

PINK CADILLAC BAR AND GRILL, INC.; DAVID L. STAAB; and KENNY S. QUAN, *Appellees/Cross-Appellants*, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant/Cross-Appellee*.

Opinion filed October 25, 1996.

*Marc A. Powell, Donald N. Peterson, II, and Jeffery R. Emerson*, of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellant/cross-appellee.

*Tom Kelley*, of Tom Kelley, P.A., of Topeka, for appellees/cross-appellants Pink Cadillac Bar and Grill, Inc., and Kenny S. Quan.

*Donald F. Hoffman*, of Dreiling, Bieker & Hoffman, of Hays, for appellee/cross-appellant David L. Staab.

Before MARQUARDT, P.J., GERNON, J., and DAVID R. PLATT, District Judge, assigned.

GERNON, J.: The Pink Cadillac Bar and Grill (Pink Cadillac) in Hays, Kansas, was severely damaged by an arson fire on January 28, 1991. The Pink Cadillac was operated by Pink Cadillac Bar and Grill, Inc. The original officers of the corporation were Kenny S. Quan and Vern Jacobs. Jacobs was the manager of the Pink Cadillac. In addition, David L. Staab was an owner, but, with the agreement of Quan and Jacobs, was considered a "silent partner" because he worked for a company, Mid-Central Sysco (Sysco), which sold food and restaurant supplies to other restaurants and bars in the area.

Staab and Quan filed a claim for proceeds under their insurance policy with United States Fidelity and Guaranty Company (USF&G). The coverage under the policy was limited to $77,000 for the building; $75,000 for personal property in the building; and $20,000 for business interruption loss.

In the course of the investigation concerning the fire, Staab was questioned by USF&G. Staab stated that he had become upset the day before the fire because a Sunday newspaper article revealed that he was an owner of the Pink Cadillac. In his own mind, he determined that either Quan or an employee by the name of Lien Quach had given out this information, although he had intended to remain a silent partner.

Staab indicated that on the morning of the fire, he had gone to a nursing home around 7 a.m. to obtain a purchase order. When he arrived at the nursing home, the purchase order had not been prepared, so he decided to stop by the Pink Cadillac to pick up some food to take to another restaurant he served as part of his employment with Sysco. When he arrived at the Pink Cadillac, he observed several fire trucks in the parking lot. He told the firefighters he was an owner and unlocked the building so they could extinguish the fire.

USF&G paid the First National Bank & Trust of Hays (Bank), the mortgage holder, $46,944.40 for the cost of repairs to the Pink Cadillac building. However, USF&G refused Staab and Quan's

claims for the losses associated with the personal property and the business interruption. The claim was refused on the belief that Staab had either set the fire or concealed the fact that he had it set by another person.

The Bank then brought suit against Staab, Quan, their spouses, Pink Cadillac Bar & Grill, Inc., and USF&G, alleging that notes due it were delinquent and seeking proceeds for the losses claimed under the USF&G policy but denied by USF&G. The Staabs, the Quans, and Pink Cadillac subsequently filed cross-claims against USF&G for the insurance proceeds and assigned their potential recovery to the Bank. In return, the Bank's claims against the Staabs, the Quans, Pink Cadillac, and USF&G were dismissed. The spouses of Staab and Quan were also dismissed from the lawsuit.

At the jury trial, there was much conflicting evidence as to the times of Staab's leaving his home both the night before the fire and the morning of the fire.

The jury found that Staab did not intentionally set the fire. The jury further found that Staab concealed or misrepresented a material fact during USF&G's investigation of the fire. There is nothing in the record as to what fact or facts the jury considered material which were concealed or misrepresented.

USF&G filed a post-trial motion for judgment in its favor due to the language of the insurance policy and a motion for a new trial in the event the post-trial motion for judgment was denied. Staab filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Quan and Pink Cadillac filed motions for judgment notwithstanding the verdict, additur, or a new trial on the issue of damages.

The trial court ultimately denied the motions of Staab and USF&G. The court also found that the severability clause created an ambiguity in USF&G's policy and ruled that Staab's conduct should not exclude Quan, an innocent coinsured, from recovering under the policy. The court then granted Quan and Pink Cadillac's motion for a new trial on damages. The court further found, in a subsequent ruling, that Pink Cadillac was also entitled to recover on the policy, since it was a named insured.

A bench trial was then held on the issue of damages. The court awarded Quan and Pink Cadillac the policy limit of $75,000 for the loss of personal property and $8,431.48 for the business interruption loss. Additionally, the court found that Staab was not a named insured under the policy at the time of the loss.

USF&G's motion to reconsider this verdict was denied. Quan and Pink Cadillac's motion for attorney fees was granted, and they were awarded $110,491.17 in attorney fees. Every party left in the lawsuit at the time of any of the judgments or rulings by the trial court appealed or cross-appealed rulings made by the trial court or its determination of damages.

## Severability Clause

USF&G argues the trial court erred in finding an ambiguity in the insurance policy. Specifically, it argues the trial court ignored the distinctive division of the policy into separate coverage parts. Since this issue involves the interpretation of a written insurance policy, our scope of review is de novo. *Northern Assur. Co. of America v. Farm Bur. Mut. Ins. Co.*, 249 Kan. 662, 665, 822 P.2d 45 (1991).

In the policy at issue in the present case, the "Separation of Insureds" clause provides:

"Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
a. As if each Named Insured were the only Named Insured; and
b. Separately to each insured against whom claim is made or 'suit' is brought."

USF&G contends this severability clause pertains only to the liability portion of the policy and does not affect the concealment clause which is attached as an endorsement to the property damage coverage part of the policy.

The concealment clause states:

"We will not pay for any loss or damage in any case of:
1. Concealment or misrepresentation of a material fact, or
2. Fraud; committed by an insured at any time relating to a claim under this policy."

Quan claimed that he was an innocent coinsured and was, therefore, entitled to insurance proceeds even if Staab was denied coverage. USF&G contended that the concealment clause precluded *all* of the insureds from coverage.

The trial court found that the concealment clause was clear and noted that USF&G's contention would be correct if its policy did not also contain the severability clause. The court relied upon *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456 (1992).

The trial court read *Raymer* to state that the "separation of insured" clause created an ambiguity which, in the case before the trial court, allowed Quan to recover the proceeds. The trial court subsequently found that Pink Cadillac was also entitled to recover.

"Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense." *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 130, 468 P.2d 157 (1970). Courts should not attempt to create an ambiguity where, in common sense, there is none. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, 794, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bur. Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300, 806 P.2d 993 (1991).

Pink Cadillac and Quan rely upon *McCauley Enterprises v. New Hampshire Ins. Co.*, 716 F. Supp. 718 (D. Conn. 1989). In *McCauley*, Raymond Esposito and McCauley Enterprises, Inc., brought an action to recover on an insurance policy so they could be named coinsureds and recover proceeds for damages caused by a fire set by the named insured. Cross-motions for summary judgment were filed, and the court ruled that disputed issues of fact remained as to whether the policy could be reformed. New Hampshire Insurance Company (New Hampshire) contended that reformation of the policy to include Esposito as an insured was immaterial because an exclusionary clause would preclude them from recovery if the policy was reformed, and, if it was not reformed,

Esposito had no insurable interest. The relevant exclusion to the insured real property stated that New Hampshire " 'shall not be liable for loss occurring . . . while the hazard is increased by any means within the control or knowledge of the insured.' " 716 F. Supp. at 720.

The district court found that the exclusionary clause was ambiguous based upon " 'the insured' " language in the clause and the policy's definition of an " 'insured.' " 716 F. Supp. at 720. The court read the policy's definition of an "insured" in conjunction with the exclusionary clause and found that the coinsured's interests were severable. The court concluded by noting that if the insurance policy was reformed to include Esposito as a named insured, he would be entitled to recover the benefits under the real property section of the policy as an innocent coinsured. The court also noted that Esposito would not be entitled to personal property coverage because the exclusion to that coverage included " 'any insured.' " 716 F. Supp. at 721.

In *Raymer*, Anthony Hammeke, a minor, participated in acts of vandalism at a school. The Catholic Diocese of Dodge City (Diocese), owner of the school, filed a petition against Anthony and his parents, alleging a cause of action for property damage against Anthony and for property damage against his parents based on their failure to exercise reasonable parental control. The Diocese also contended that the parents were liable on their statutory liability pursuant to K.S.A. 38-120 for the damages caused by Anthony.

The parents notified their homeowners insurance carrier, Farmers Insurance Co., Inc., (Farmers) of the action. Subsequently, a default judgment in rem was entered against the parents for failure to exercise reasonable parental care in controlling and supervising Anthony, and damages were awarded to the Diocese. The Diocese then filed an order of garnishment against Farmers, but Farmers answered by claiming it was not indebted to the Hammekes under their homeowners policy because the policy did not cover property damage either expected or intended by the insured. The trial court ruled in favor of Farmers, but this court reversed, and the Supreme Court granted review. The Kansas Supreme Court concluded that "the only question for this court to determine

is whether the homeowners policy's severability of interests clause makes ambiguous the otherwise unambiguous language of the policy's exclusion for intentional acts by an insured, thereby providing coverage to the parents for their alleged negligent supervision of their child." 251 Kan. at 692.

The court in *Raymer* stated that Kansas does not look to the underlying cause of the injury to determine coverage, but looks to the specific theory alleged. The court held that because the Diocese had alleged separate theories of liability against Anthony and his parents, the effect of the exclusionary clause had to be considered with respect to each of the insureds based on the distinct theory of liability alleged. The Kansas Supreme Court reversed the district court's award of summary judgment to Farmers in the garnishment action and remanded the case with instructions to enter summary judgment for the Diocese.

Here, the policy clearly reveals that the concealment clause appears as an endorsement to the commercial property coverage part of the policy. The severability clause is distinctly separated from this section and is placed in the commercial general liability portion of the policy. The language of the severability clause also indicates that it is intended to apply to liability actions and not actions to enforce property coverage. The clause states that "this insurance applies . . . [s]eparately to each insured against whom claim is made or 'suit' is brought." Claims are not being made against the insureds in this action but against the insurer for coverage. In addition, the language preceding and following the clause states that "this insurance" pertains to the general liability coverage. Therefore, it is our conclusion that when read in its entirety, the policy here is not rendered ambiguous by the severability clause.

The language of the concealment clause, however, raises an entirely different issue so far as coverage being extended to Pink Cadillac and Quan. After the new trial on damages, the court issued a memorandum decision awarding Quan and Pink Cadillac $83,431 in insurance benefits. As part of its reasoning the court stated:

"The Defendant contends that since named insured Dave Staab was found by the jury to have concealed or misrepresented a material fact during the investigation that the actual loss of the plaintiff should be cut in half. The court has a

couple of problems with this argument. First the evidence is clear that Dave Staab was not endorsed by the defendant as an insured until after the fire occurred. Secondly the evidence is clear to the court that the actual insured was Pink Cadillac, Inc. a Kansas corporation. The court finds nothing in the law or the policy that allows one party to a contract to unilaterally amend the agreement without the consent of the other parties. The actual named insureds under this policy at the time of the loss were Kenny Quan and Pink Cadillac, Inc. Neither of these plaintiffs were found to have had any complicity in the arson fire."

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

The policy indicates that "Vern Jacobs & Kenny Quan DBA Pink Cadillac" were originally named as the insureds and the policy period was to run from January 17, 1991, to January 17, 1992. The policy also includes, however, an endorsement changing the named insured to "Dave Staab & Kenny Quan DBA Pink Cadillac" that was effective on January 17, 1991. The date of the fire was January 28, 1991.

The record reveals that two witnesses offered testimony concerning this endorsement. Gene Stramel, an independent insurance agent, testified that Jacobs and Quan contacted him about obtaining coverage on the Pink Cadillac after their previous insurance was canceled. Stramel stated that he issued them an USF&G policy. Stramel stated that Staab was not originally included on the policy because he was not aware of Staab's ownership in the business. He also noted that Staab was added to the policy once his interest in the Pink Cadillac was discovered.

During the subsequent trial on damages, Craig Turner, an investigator for USF&G, stated that the endorsement to the policy occurred after the fire but was executed retroactively to the date the policy became effective, January 17, 1991. He stated that Staab or Quan probably authorized the endorsement because the insurance agent, Stramel, would not have requested the endorsement without their consent.

It is clear the purpose of the endorsement was to have Staab's interest in the Pink Cadillac indicated in the policy. It is not clear, however, whether Quan and Staab actually consented to the endorsement.

Some confusion surrounds this issue on appeal. The pretrial order indicates that Staab and Quan were arguing that they purchased the policy from USF&G on January 17, 1991, and claimed benefits for the damages to the Pink Cadillac as part of their contentions and theories of recovery. The pretrial order, however, does not mention any challenge to the validity of the endorsement adding Staab as an insured. By finding that Quan and Pink Cadillac did not assent to the endorsement, the trial court, in essence, relied on an issue and theory of recovery outside the pretrial order. See K.S.A. 60-216; *Herbstreith v. de Bakker*, 249 Kan. 67, Syl. ¶ 1, 815 P.2d 102 (1991) ("The pretrial order under K.S.A. 60-216 controls the course of the action unless modified to prevent manifest injustice. An issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court."). We conclude the trial court erred in making such finding.

"It is the general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 149, 519 P.2d 737 (1974). The exclusion must be given its plain, ordinary meaning. *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 333, 681 P.2d 15 (1984).

The parties cite numerous cases on whether an innocent coinsured is entitled to coverage. In *Catholic Diocese of Dodge City v. Raymer*, 16 Kan. App. 2d 488, 493, 825 P.2d 1144, *aff'd* 251 Kan. 689, 840 P.2d 456 (1992), this court concluded that " '[a]n insured' or 'any insured' refers to any and all insureds under the policy." Accordingly, since Staab was an insured under the policy and the language of the concealment clause refers to "an insured," Pink Cadillac and Quan are precluded from coverage.

The issues concerning the language of the clause are tied with the issues concerning whether Staab either concealed or misrep-

resented a material fact and whether there was substantial competent evidence of a misrepresentation of a material fact by Staab relating to the cause of the fire.

Staab contends there was insufficient evidence to support the jury's verdict that he concealed or misrepresented a material fact during USF&G's initial investigation into the fire.

"[W]hen a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, [an appellate court] does not weigh the evidence or pass on the credibility of the witnesses. 'If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal.' " *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 127, 815 P.2d 72 (1991) (quoting *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 [1988]).

In *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179 (2d Cir. 1984), *cert. denied* 474 U.S. 826 (1985), the Second Circuit Court of Appeals discussed the materiality requirement to such a finding. In *Fine*, the insured's commercial warehouse burned when the sprinkler system froze. The insured falsely stated to the insurer during an examination under oath that the temperature gauge controlling the sprinkler system was set at 40 degrees when in fact he had instructed his employee to set the temperature at 25 degrees. The trial court held the insured's misrepresentations were immaterial because they did not contribute to the loss. The Second Circuit reversed, holding that "the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." 725 F.2d at 183. The Court of Appeals further noted:

"It thus appears that materiality of false statements is not determined by whether or not the false answers deal with a subject later determined to be unimportant because the fire and loss were caused by factors other than those with which the statements dealt. False sworn answers are material if they might have affected the attitude and action of the insurer. They are equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate." 725 F.2d at 184.

In Kansas, "[a] matter is material if it is one to which a reasonable man would attach importance in determining his choice of action

in the transaction in question." *Griffith v. Byers Construction Co.*, 212 Kan. 65, 73, 510 P.2d 198 (1973). Applying the reasoning in *Fine* to this definition, a false statement is material if a reasonable insurance company, in determining its course of action during the investigation, would attach importance to the fact misrepresented. See *Long v. Insurance Co. of North America*, 670 F.2d 930, 934 (10th Cir. 1982).

The problem in the present case is that the jury did not specify the nature of the concealment or the misrepresentation. USF&G presents 10 incidents of Staab's alleged false statements it claims were material in denying Staab's and Quan's claim for coverage.

After reviewing these incidents and the record in the light most favorable to USF&G, substantial competent evidence does exist to support the jury's finding. For the sake of brevity, a few examples will be addressed: First, Staab told USF&G during his examination under oath that no one from Sysco had expressed concern about his involvement with the Pink Cadillac. However, Carl Canova, one of Staab's supervisors at Sysco, stated that he told Staab it was not good judgment to be involved in the restaurant business. Second, Staab also stated at trial that he was not mad about the newspaper article revealing his ownership in the Pink Cadillac. Yet, both Quach and Staab's wife, Rebecca, testified that Staab was very upset about this revelation. Third, Staab mentioned during the investigation that he went to the nursing home around 7 a.m. on the morning of the fire, but two nursing home employees testified that Staab arrived at approximately 6 a.m. and stayed for only a few minutes.

While these discrepancies appear insignificant when viewed with hindsight, Staab's statements could reasonably have had an impact on USF&G's investigation. The questions USF&G asked Staab were material to its investigation into whether he was involved in the fire and whether the claim should be allowed. Consequently, the jury's finding that Staab concealed or misrepresented a material fact during the investigation is supported by the evidence.

Staab next argues there is insufficient evidence to establish that he misrepresented a material fact concerning the cause of the loss. The parties continue to argue and apply their own interpretations

to the jury's finding that Staab concealed or misrepresented a material fact during USF&G's investigation into the fire loss. As noted by the parties, it is pure speculation as to what fact or facts the jury found were materially concealed or misrepresented. Staab's and USF&G's efforts to force this court to make a factual determination regarding Staab's alleged involvement in the fire is outside this court's scope of review. See *McKissick v. Frye*, 255 Kan. 566, 592, 876 P.2d 1371 (1994).

USF&G would further have us consider whether another exclusion provision prevents Pink Cadillac and Quan from recovering insurance benefits from the loss. However, USF&G did not argue this issue during trial, and a decision was never specifically rendered on it. A party is not permitted to raise an issue not previously presented to the trial court or inconsistent with its position before the trial court unless the newly asserted argument only involves a legal issue arising on proven or admitted facts. *Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, 901, 522 P.2d 401 (1974); *Higher Educ. Assistance Foundation, Inc. v. Glenn-Healy*, 17 Kan. App. 2d 345, 348, 836 P.2d 25 (1992).

The provision asserted by USF&G states that it will not pay for any loss or damage caused by, or resulting from, the following:

"h. Dishonest or criminal act by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:
(1) Acting alone or in collusion with others; or
(2) Whether or not occurring during the hours of employment.
"This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered."

USF&G argues that Staab's concealment about his involvement in having set the fire while making a claim under the policy for the loss constitutes a dishonest act by an authorized representative of the Pink Cadillac.

USF&G asks us to interpret the insurance policy and then apply that interpretation to facts which were never established at trial. It was hotly disputed whether Staab was involved in the arson, and the jury specifically found that he did not set the fire. Moreover, while we have determined that there was substantial competent

evidence to support a finding that Staab concealed a material fact during USF&G's investigation into the fire, this concealment would not constitute a dishonest act under the language of the policy because it did not cause or result in the loss. Because Staab's alleged involvement in the fire was never proven at trial, this issue is not properly before this court.

### Prior Insurance Claims Evidence and Admission of Inaccurate Photograph

USF&G argues the trial court erred in granting Staab's motion in limine which prevented it from introducing evidence of a prior civil wrong and in refusing to grant a new trial when Staab admitted a false exhibit into evidence and then commented on this evidence in closing arguments to the jury. Given our interpretation of the insurance policy, these issues are moot.

### Instruction on Definition of Concealment or Misrepresentation

In his cross-appeal, Staab argues the trial court erred by refusing to give a fraud instruction adapted from PIK Civ. 2d 14.40. Staab's proposed instruction stated:

"In order for Defendant to prevail on its claim of concealment and misrepresentation it must prove:
1. That false representations were made by Dave Staab as a statement of existing and material fact.
2. That the representations were known to be false by the party making them or recklessly made without knowledge concerning them.
3. That the representations were intentionally made for the purpose of inducing another party to act upon them.
4. That the other party reasonably relied and acted upon the representations made.
5. That the other party sustained damage by relying upon them.
"A representation is material when it relates to some matter that is so substantial as to influence the party to whom it was made."

While the record reveals that Staab submitted the proposed instruction to the trial court, it does not reveal that Staab raised any objection to the court's failure to give the instruction before the jury began deliberating.

A party may not assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury re-

tires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for objection, unless the instruction is clearly erroneous. K.S.A. 60-251(b). "An instruction is clearly erroneous when the reviewing court reaches a firm conviction that, if the trial error had not occurred, there was a real possibility that the jury would have returned a different verdict." *Noon v. Smith*, 16 Kan. App. 2d 818, Syl. ¶ 2, 829 P.2d 922 (1992). Because Staab did not object to the court's failure to give his requested instruction, this court may only reverse if the exclusion of the instruction was clearly erroneous.

As USF&G points out, Staab's proposed instruction misstates the law as it pertains to an insurer's defense of concealment or misrepresentation. Other jurisdictions have distinguished common law fraud from this insurance defense. These jurisdictions recognize that, unlike an action for fraud, an insurer who raises the defense of concealment or misrepresentation does not have to establish that it actually relied on the concealment or misrepresentation or that it suffered an injury. See *e.g., Rego v. Connecticut Insurance Placement Facility*, 219 Conn. 339, 346-47, 593 A.2d 491 (1991); *Mutual of Enumclaw Ins. v. McBride*, 295 Or. 398, 403-04, 667 P.2d 494 (1983); *St. Paul Mercury v. Salovich*, 41 Wash. App. 652, 656, 705 P.2d 812, *rev. denied* 104 Wash. 2d 1029 (1985). Given this distinction, the trial court's failure to give the instruction was not clearly erroneous because the requested instruction did not accurately define the defense.

Staab, Quan, and Pink Cadillac raise several other issues concerning the judgment itself, including whether the court erred in ruling that Pink Cadillac and Quan suffered a business loss of $84,031.48; whether the court erred in denying prejudgment interest; and whether the attorneys for Staab, Quan, and Pink Cadillac are entitled to reasonable attorney fees for the prosecution of the appeal. Given our rulings on the language of the policy and our conclusion that the case must be reversed on the basis of the in-

terpretation of the concealment and severability clauses, these issues are either rendered moot or reversed consistent with our rulings herein.

Reversed.