UNITED TECHNOLOGIES CORP., et al.

v.

AMERICAN HOME ASSURANCE COMPANY.

No. 2:92cv267 (JBA).

United States District Court, D. Connecticut.

July 11, 2000.

David B. Zabel, Stewart I. Edelstein, Marci J. Silverman, Stuart M. Katz, Cohen & Wolf, P.C., Bridgeport, CT, Kay M. Brady, Stephen M. Goldman, Carolyn M. Branthoover, Thomas J. Smith, Robert Bruce Allensworth, David F. McGonigle, Keith A. Fabi, Michael G. Zanic, Evan A. Bloch, David T. Fisfis, Diane B. Hopper, Terry Budd, C. Michele Kirk, Peter J. Kalis, David R. Cohen, Mary Beth Collery, Thomas M. Reiter, John P. Englert, Michael S. Nelson, Alan W. Tamarelli, Richard W. Hosking, Eric S. Lammers, Heath B. Monesmith, Joseph C. Safar, Jeanne M. Sauer, David P. Anderson, Douglas J. Simmons, Kirkpatrick & Lockhart, Pittsburgh, PA, Patrick J. McElhinny, Amy O. Goodman, Brian F. Saulnier, Joseph R. Gette, Erica D. Merkow, Douglas A. Pearson, Angelica R. Hopwood, Kristen M. Del Sole, Julie V. Stanier, Richard D. Dworek, Matthew R. Swenson, James E. Hannon, Jr., Paul K. Stockman, Joseph L. Luciana, III, Kirkpatrick & Lockhart, Pittsburgh, PA, for United Technologies Corp., Carrier Corporation, United Tech Automotive, Inc, plaintiffs.

Robert W. Allen, Noble Francis Allen, Timothy P. Jensen, Tyler, Cooper & Alcorn, New Haven, CT, David A. Silva, Bruce R. Kaliner, Wayne R. Glaubinger, Stuart Cotton, Daniel Markewich, John Mezzacappa, Mitchell S. Cohen, Diana E. Goldberg, Sarah D. Strum, Aaron F. Fishbein, Hilary M. Henkind, Mark J. Weber, William D. Wilson, Todd A. Bakal, Elisa T. Gilbert, Michael T. Altman, Mound, Cotton & Wollan, New York City, Roger E. Warin, William T. Hassler, Libretta A. Porta, Thomas M. Contois, Mark C. Elmer, John L. Jacobus, Ripple L. Weistling, Ellen Hochstedler Steury, John A. Flyger, Edward J. Twomey, Andrew J. Sloniewsky, Stephen A. Fennell, Errol R. Patterson, Heather Doherty Clark, Steptoe & Johnson, Washington, DC, Henry T. Vogt, Simsbury, Jeffrey R. Lerman, Leonard A. Busby, Howard J. Bashman, Cynthia B. MacQueen, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for American Home Assur. Co., defendant.

*RULING ON DEFENDANT'S RENEW-AL OF MOTION FOR JUDGMENT AS A MATTER OF LAW AS TO THE VERDICT REGARDING BREACH OF COVENANT OF GOOD FAITH AND FAIR DEAL-ING OR, IN THE ALTERNATIVE TO ALTER OR AMEND JUDG-MENT [DOC. # 1016–1, 1016–2, 1016–3]*

ARTERTON, District Judge.

This insurance coverage action was brought by United Technologies Corporation and its subsidiaries, Carrier Corporation and United Technologies Automotive (collectively, "UTC") against its insurer, American Home Assurance Company ("AH") for breach of contract, breach of the Connecticut Unfair Trade Practices Act ("CUTPA"), and breach of the common law duties of good faith and fair dealing. The action is based on AH's failure to provide property damage coverage for fortuitous contamination of the soil, groundwater and surface water at numerous facilities nationwide. Further familiarity with the factual background of this case is assumed. *See* Doc. # 595 (Ruling Granting in Part, Denying in Part Motion for Summary Judgment); Doc. # 953 (Ruling Denying Defendant's Motion for Judgment as a Matter of Law on Count One Regarding Windsor Locks Site).

The case on two of the sites, Windsor Locks ("WL") and City of Industry ("COI") went to trial from January to May of 1998, in two phases. Following a jury verdict in plaintiff's favor for the WL site on UTC's breach of contract (and awarding nominal damages for the COI site), common law bad faith and CUTPA statutory claims, AH moved for judgment as a matter of law. After certain documents were disclosed post-trial by defendant, the parties were allowed to re-submit certain post-trial motions to consider these documents as part of the evidentiary record. Defendant's renewed motion for judgment as a matter of law on the verdict finding it breached the common law covenant of good faith and fair dealing is now before the Court on that supplemented record.

### Legal Standard

■ On a motion for judgment as a matter of law pursuant to Rule 50(b), a district court may grant a motion for judgment as a matter of law only if:

there exists "such complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or the evidence in favor of the movant is so overwhelming "that reasonable and fair minded [persons] could not arrive at a verdict against [it]."

*Luciano v. The Olsten Corp.,* 110 F.3d 210, 214 (2d Cir.1997) (*quoting Cruz v. Local Union No. 3,* 34 F.3d 1148, 1154 (2d Cir. 1994)). "Judgment n.o.v. is proper 'only if the evidence viewed in the light most favorable to the non-movants, without considering credibility or weight, reasonably permits only a conclusion in the movant's favor.'" *Doctor's Assoc., Inc. v. Weible,* 92 F.3d 108, 112 (2d Cir.1996) (*quoting Baskin v. Hawley,* 807 F.2d 1120, 1129 (2d Cir.1986)).

■ American Home also moves for alteration or amendment of the judgment under Rule 59(e) (providing that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). However, "[w]hatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge," and thus cannot be used to relitigate old matters. *Air Espana v. O'Brien,* 1997 WL 803756 (E.D.N.Y. 1997) (Glasser, J.) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 11 *Federal Practice and Procedure* § 2801.1 ("The Rule 59(e) motion may not be used to relitigate old matters")). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' ...." *Sequa*

*Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant a motion when the'" *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir.1998).

## Discussion

■ Defendant maintains that plaintiff's trial evidence was utterly insufficient to prove that defendant used its counsel as an instrument of purposeful delay, since there was no evidence of intention that counsel's information-gathering was for delay, or unrelated to evaluating novel legal claims. Plaintiff challenges the propriety of defendant's motion on the grounds that this was never the subject of a Rule 50(a) motion. Defendant does not address this contention. While defendant's motion could be denied on this basis, the Court will address the substance of defendant's motion because its contention miscomprehends the substance of plaintiff's bad faith claim. UTC offered evidence that defendant did nothing itself and required nothing of its attorneys, in that it imposed no schedule or deadlines on its counsel, required no coverage opinion letter, authorized no retention of experts, instituted no adjustment process, set minimal reserves, and by way of post-trial documents, showed that AH manifested an early intention to deny claims like plaintiff's which remained unchallenged. A jury was thus justified in drawing from these facts the inference that AH "parked" the property pollution claims, while misleading or deceiving the plaintiff insured into believing that productive steps towards claims resolution were underway.

Defendant vociferously argues that no finding of bad faith can attach in these circumstances, where the plaintiff itself has acknowledged that the claims were novel, thus justifying a lengthy evaluation and investigation period. The late-disclosed memorandum by Walter Owens, however, describing AH's position on pol-

lution claims demonstrates that the defendant had taken an unequivocal "no coverage" position at a relatively early juncture. *See* Def. Mem. in Support, Ex. A. While defendant would have the Owens memorandum construed as recognizing the potential for certain kinds of pollution coverage, it is abundantly clear that Owens in no way viewed plaintiff's type of industrial waste clean up claims as covered. His language reflects outrage that "an insured can operate his business almost to the point of indifference and then call upon the insurer to pay for a loss which results therefrom. The normal reaction is to regard any such possibility as a violation of every sound principle of insurance." *Id.*

Moreover, the spin defendant puts on the Owens memorandum is unavailing given defendant's similar non-handling of plaintiff's COI claim which was based on a discrete accidental occurrence causing ground and ground water resulting from PCE escape from defective equipment. Without question, defendant needed to investigate the factual underpinning of plaintiff's claims and properly sought legal advice from its attorneys as well as relevant information from plaintiff via counsel. However, this misses the point of plaintiff's claim of breach of the covenant of good faith and fair dealing, which addresses defendant's misleading claims handling process and its failure to ever provide any definitive coverage position to UTC other than a reservation of rights.

As defendant clarified at trial, defendant's attorneys were *not* retained to adjust plaintiff's losses. The fact that AH's and UTC's counsel engaged in disputatious and unproductive exchanges thus does not relieve defendant, plaintiff's insurer, of its claims processing obligations to plaintiff. Defendant's argument that plaintiff lacked direct evidence of any decision made to intentionally prevent the claimed loss from being resolved, while accurate, overlooks the strength of the inferences properly drawn from the circumstantial evidence of defendant's inaction. Although defendant

characterizes this inference as mere speculation, the jury could properly combine discrediting AH's Vice President Thomas Carey's testimony that AH's delay had no profit motivation, with the financial benefit to AH accruing from delaying a claim payout and the complete lack of any adequate explanation for the vacuum in factual investigation and legal coverage decisions, as well as AH's representations to the court in the Massachusetts action regarding its right to investigate claims, to conclude that defendant had a design to mislead or deceive UTC about its intent and purposeful refusal to investigate, adjust and resolve UTC's claims in good faith.

While defendant argues that the evidence about its investigation, however mishandled, was insufficient to support a bad faith claim, plaintiff correctly notes that this contention assumes the existence of an investigation by AH in the first instance. No evidence of any real factual investigation was introduced. Thus defendant's various theories regarding the necessity for the way it handled these novel environmental claims, and what it claimed as its investigation's purpose reasonably could have been concluded by the jury to have been transparent, after-the-fact rationalizations, particularly in light of defendant's post-trial produced documents. AH's purposeful undertaking of "minimal activity," Tamarelli Aff. Ex. C, on its insured's claims under its policy is evidence of more than just claims payment delay, bad judgment or honest mistake about the insurer's rights or duties.[1] The Owens memorandum, which also would have been a part of the jury's consideration had it been timely produced, demonstrates AH's recognition as early as 1987 that the disposition of claims like plaintiff's created grave financial implications that might impact the company and the insurance industry as a whole. *See* Tamarelli Aff. Ex. 3, tab 3. Defendant's attention to self interest is also supported by evidence of its policy and plan to send all such claims to its attorneys "to protect our interests." *Id.*, Ex. 3 at Tab 10.

Whether evidence of a financial benefit derived as a result of unjustifiably and indefinitely delaying disposition of a claim could inferentially support a finding of an improper financial motive to deny a claim and retain use of the money sufficient to support the verdict, or whether such retention could only be viewed as an ancillary financial benefit incidentally derived from not paying uncovered or questionable claims, need not be decided. Were such evidence the sole basis for the verdict, it is doubtful that it could stand. The jury had, and with timely pretrial discovery compliance by defendant would have had, far more evidence to consider which would support the verdict. Based on all the evidence in the record, including the late-disclosed documents, an inference could be reasonably and logically drawn that defendant never intended to investigate or adjust the claims because it never intended to pay the claims, notwithstanding the activities of its lawyers. Thus, whatever may have been the scope and content of the wrangling between counsel, the bottom line was that defendant never ensured that any investigation was conducted, and never communicated any coverage decision to its insured, resulting in a state of perpetual claims limbo for UTC. The jury was entitled to conclude from this evidence that there was a purposeful effort to prevent or postpone definitive resolution of

---

1. The jury was instructed on the bad faith claim as follows:

"Bad faith" generally implies a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation which is not prompted by an honest mistake about one's rights or duties. However, bad faith is not simply bad judgment or negligence. Rather bad faith implies the conscious doing of a wrong motivated by dishonest purpose or ill will. The mere failure to pay an insurance claim is not alone sufficient to establish bad faith. Further, mere delay in the payment of a claim, without proof of a design to mislead or deceive the insured, cannot support a claim of bad faith. Jury Instructions (Phase II) at p. 14.

the claims which, by the deposition testimony of defendant's own employee, would be bad faith. Arthur Depo. at p. 129, Vol. II. For these reasons defendant's Motion for Judgment as a Matter of Law on the Bad Faith Verdict Based on Sufficiency of the Evidence [doc. # 1016] is DENIED.

Defendant's motion also challenges the viability of plaintiff's bad faith claim as a matter of law. While plaintiff challenges this issue as improperly raised under Rule 50(b), defendant's motion raises the interesting question in this diversity case of whether the Connecticut Supreme Court, which has not squarely considered the issue, would recognize a common law action for property insurer procedural bad faith, that is, claims handling misconduct not involving wrongful withholding of payment due under an insurance policy, and thus the issue will be analyzed to determine if the jury was properly charged. *See Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir.1995) (where highest state court has not spoken on an issue of substantive state law, federal court sitting in diversity action must predict what that court would hold).

Succinctly put, defendant argues that a claim for bad faith is not actionable without a showing of a failure to pay a meritorious claim, 'substantive bad faith', while plaintiff argues that bad faith in the handling of an insurance claim, 'procedural bad faith', can provide the basis for such a cause of action, even if the insurer has a reasonable basis for disputing coverage. The Connecticut Unfair Insurance Practices Act ("CUIPA") includes statutory protections for insureds as to the claims settlement process itself, and CUIPA violations by an insurer's settlement practices are actionable if they constitute a general business practice by that insurer, regardless of the insurer's intent. Defendant contends that this statutory remedy is plaintiff's sole recourse for procedural bad faith claims. Plaintiff claims that nothing under this statute or in Connecticut case law bars its common law claim, and that

the lower court decisions cited by defendant are distinguishable from the present case. For the reasons that follow, the Court agrees with the plaintiff.

The Court begins its analysis with the Connecticut Supreme Court's first word on the topic in *Buckman v. People Exp., Inc.*, 205 Conn. 166, 530 A.2d 596 (1987). In *Buckman,* the Connecticut Supreme Court first recognized an independent cause of action in tort arising from an insurer's common law duty of good faith. The plaintiff brought suit after his self-insured former employer failed to provide conversion forms to allow him to continue his insurance coverage after the termination of his employment, despite repeated verbal and written requests that it do so. The plaintiff alleged that he suffered emotional distress due to the defendant's failure to provide the required forms, as he believed himself to be without health insurance coverage, and sought damages both for the insurer-employer's violation of Conn. Gen. Stat. § 38–262d and its failure "to act in good faith with regard to the interests of the plaintiff..." *Id.* at 167, 530 A.2d 596. The trial court denied defendant's motion to set aside the jury verdict in plaintiff's favor, and the Connecticut Supreme Court affirmed. Reasoning that an independent cause of action existed in tort arising from an insurer's common law duty of good faith, derived from the implied covenant of good faith and fair dealing that has been applied in a variety of contractual relationships, the court concluded that the insurer "had a common law duty to act with good faith and fair dealing toward the plaintiff." *Id.* at 170, 530 A.2d 596. Citing the general verdict rule, the court presumed that the jury found "that the defendant acted in bad faith in failing to provide the statutorily mandated notice," and upheld the verdict.

A closer analysis of *Buckman* demonstrates that the bad faith alleged was not of the substantive variety. Although plaintiff's damages were caused by the belief of noncoverage, and the attendant

emotional distress, the defendant insurer had not denied a claim or refused coverage. Rather, the plaintiff alleged bad faith in the way the defendant insurer handled plaintiff's request for insurance services, namely, delay and lack of response. While the core of plaintiff's claim for damages may have been the lack of insurance coverage caused by the insurer's nonresponsiveness, the plaintiff in *Buckman*, like UTC here, was never denied coverage. Rather, Mr. Buckman's requests were ignored and evaded. Seen in this light, while AH may have employed more sophisticated techniques, *Buckman* is not dissimilar to the claims UTC pressed at trial.

The cases cited by the defendant do not persuade the Court to construe *Buckman* more narrowly and limit its holding only to the bad faith denial of claims or coverage. Contrary to defendant's portrayal of its holding, *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F.Supp. 718 (D.Conn.1989) does not reject the existence of a cause of action under Connecticut law for "procedural bad faith", but rather holds that the plaintiff failed to adduce sufficient evidence on such a claim to survive summary judgment. The allegation in *McCauley* that the failure of the defendant insurer "to pay the proceeds of the policy, based upon its investigation and discovery which has been conducted in the action, is a breach of its implied covenant of good faith and fair dealing," clearly states a "substantive" bad faith claim. That portion of McCauley's claim which focused on the delay between the date the insurance company allegedly had all the information necessary to resolve the claim and the date it denied the claim was not rejected by the court based on any procedural/substantive dichotomy. Rather, the court found that plaintiff had not come forth with evidence that claims handling deficiencies by the delays or continued investigation of the claim were so unreasonable or specious as to constitute bad faith. *Id.* at 722 (delay in rejecting proofs of loss not in bad faith where proofs were untimely, and delay in formally denying coverage

did not constitute bad faith where defendant was continuing its investigation, and "such conduct cannot support an inference of bad faith handling of an insurance claim.").

The opinion in *Corriveau v. Aetna Casualty & Surety Co.*, 1996 WL 156109 (Conn.Super.Mar.15, 1996) is, in part, to similar effect. The plaintiff insureds alleged that the insurer breached its contract with them, and thereby breached the implied covenant of good faith and fair dealing. Specifically, the plaintiffs alleged that the delay in payment of the insurance policy proceeds, as well as the insurer's failure to present an initial estimate of loss, its misrepresentation of the initial estimate of loss, its referral of plaintiff to an unlicensed contractor, and its attempt to remove plaintiff's consultant, all constituted bad faith. Citing *McCauley*, the court concluded that plaintiffs "have not come forth with any evidence from which it could be inferred that the defendant failed 'to act in good faith and fairly in handling the claims of an insured,'" *id.* at *4, and thus summary judgment was granted.

While *Corriveau* does conclude that some of plaintiffs' allegations could not serve as the basis of a bad faith claim as they did not "relate to an unreasonable withholding of proceeds due under a policy," *id.* at *3, the court also grounded its conclusion on the language of the policy, which included an appraisal clause, on which the defendant insurer relied to explain much of its delay in reaching a final determination. To the extent *Corriveau* suggests that a bad faith claim cannot lie in the absence of an allegation that payments were unreasonably withheld, it is inconsistent with *Buckman*, and not binding on this Court. The Court also notes that the conduct alleged to have breached the covenant of good faith and fair dealing in *Corriveau* does not approach, in either degree or kind, the evidence in the instant case regarding the insurer's policy and intent to "park" the claims to postpone any

judicial determination of coverage as long as possible. In the Court's view, it makes little sense to hold insurers accountable for their bad faith actions in wrongfully denying claims, yet immunize them from liability if they simply refuse to issue the denials that can prompt coverage-testing litigation.

Defendant also cites to *Bergen v. Standard Fire Ins. Co.*, Docket No. CV 93044099S, 1997 WL 809957 (Dec. 31, 1997, Conn.Super.). While the *Bergen* court cited *Buckman* for the principle that "[t]he plaintiff has to show that it is entitled to recover under the policy before the insurer can be shown to have acted in bad faith," *id.* at \*14, the above discussion demonstrates that this conclusion mis-characterizes the holding in *Buckman*. Further, *Bergen's* observation that "the basis of [a bad faith claim] in a case like this is the unreasonable withholding of payment on an insurance policy" cannot justifiably be interpreted as its view that withholding of payment is a necessary predicate to all bad faith claims, given that the plaintiffs in *Bergen* sought precisely that relief. As the *Bergen* plaintiffs did not allege procedural bad faith in the processing of their claim, and they did seek insurance proceeds, the trial court's focus on the substantive aspects of a bad faith claim is unremarkable.

■ Accordingly, the Court concludes that the Connecticut Supreme Court would not limit the tort of bad faith in the property insurance context to claims of unreasonable or wrongful denial of claims. The insurer duty of good faith is not triggered only when coverage is unquestioned. A number of jurisdictions have reached the same conclusion. *See Hatch v. State Farm Fire and Casualty Co.*, 842 P.2d 1089 (Wyo.1992) (where coverage was "fairly debatable," no liability resulted from denial of claim, but denying summary judgment as to allegations of bad faith in the handling of the claim); *Coventry Associates v. American States Ins. Co.*, 136 Wash.2d 269, 961 P.2d 933 (1998) (bad

faith handling of insurance claim is actionable, even when policy does not provide for coverage); *Judah v. State Farm Fire & Cas. Co.*, 266 Cal.Rptr. 455 (Cal.Ct.App. 1990) (cause of action for tortious breach of the implied covenant of good faith and fair dealing can lie even in the absence of coverage under the policy, because duty is one imposed by law and does not arise from terms of contract itself), *review dismissed*, 281 Cal.Rptr. 766, 810 P.2d 998 (1991). As the Supreme Court of Arizona put it, in reaching the same conclusion:

> The core of the duty of good faith and fair dealing is that the insurer act reasonably towards its insured. We grant that security from financial loss is a primary goal motivating the purchase of insurance. That security flows from the express covenants of the insurance agreement. However, the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing.

*Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 508, 838 P.2d 1265 (1992) (holding that failure to pay an insurance claim or violation of some express provision of the insurance contract "is not the sine qua non for an action for breach of the implied covenant of good faith and fair dealing.")

The Court also does not find persuasive defendant's contention that CUIPA provides the sole remedy for improper claims handling. The Court notes at the outset that this argument is undermined by the structure of the statute itself. CUIPA makes no distinction between substantive and procedural unfair practices, and in fact prohibits both conduct that would fall under the rubric of procedural bad faith, *see* Conn. Gen.Stat. § 38a–816(6)(b), (c), (d) and (e), and the wrongful denial of coverage in certain circumstances, *see* Conn. Gen.Stat. § 38a–816(6)(f),(g),(m), and (n). AH has posited no convincing reason why

the statute which proscribes both wrongful denials of coverage and wrongful claims handling should preempt only one variety of insurer misconduct (procedural mishandling) while a common law tort claim for another variety (substantive wrongful denial) should remain independently actionable. AH's position in this regard is also undermined by *Buckman,* in which the Connecticut Supreme Court rejected a similar argument that the plaintiff's statutory remedies under Conn. Gen.Stat. § 38–262d(a) precluded a common law bad faith claim. "This [argument], however, is erroneous because this court recognizes an independent cause of action in tort arising from an insurer's common law duty of good faith. This cause of action is separate and distinct from the plaintiff's statutory claims." 205 Conn. at 170, 530 A.2d 596.

Further, to limit recovery for bad faith claims-handling practices to the remedies found in CUIPA would narrow the class of protected insureds to those who can prove the misconduct was a general business practice on the part of the insurer, since actionable CUIPA claims "require a showing of more than a single act of insurance misconduct." *Mead v. Burns,* 199 Conn. 651, 657, 509 A.2d 11 (1986). Thus, by defendant's reasoning, if an insurer acted with intentional bad faith in the procedural handling of a single insured's claim of whatever magnitude, but never formally denied coverage and thus did not unreasonably refuse to pay benefits, the insured would be precluded from seeking relief under CUIPA or common law. Such a scenario would provide a perverse incentive for insurers to delay and obfuscate the claims handling process, particularly on large losses, without resolving the claim promptly such that its disposition could be subject to judicial scrutiny.

After much consideration, the Court concludes that plaintiff's interpretation of the statute and the relevant case law provides the better analysis. Claims of bad faith on the part of an insurer are not limited solely to substantive decisions to deny coverage where the reasonable debatability of plaintiff's environmental contamination claims could serve as a defense. Nor is CUIPA the sole remedy for claims that involve insurer misconduct in its claims handling procedures. Rather, the two remedies are complementary, allowing a statutory action with punitive damages and attorney's fees when the misconduct is of such scope as to constitute a general business practice, regardless of the intent of the insurer, while still providing a common law remedy when an insurer's motive or intent is sufficiently egregious to merit sanction, even for a single occurrence. Given this logic, and the reasoning outlined in *Buckman,* the Court predicts that the Connecticut Supreme Court would recognize a cause of action for procedural bad faith in the property claims handling process under circumstances presented by the facts before the Court.

### Conclusion

Accordingly, Defendant's Motion for Judgment as a Matter of Law as to the Verdict Regarding Breach of Covenant of Good Faith and Fair Dealing [doc. # 1016–1] is DENIED. For the foregoing reasons, and because the new, post-trial evidence favors plaintiff, not defendant, Defendant's Alternative Motion to Alter or Amend Judgment Under Rule 59(e) [doc. # 1016–2, # 1016–3] is also DENIED.

IT IS SO ORDERED.